DAVID S. THOMAS v. ALBERT S. ABBOTT, TREASURER OF THE COUNTY OF ANTRIM.

*Local option law—Validity of election—Proceedings of supervisors.*

1. The resolution of the board of supervisors, adopted in conformity to law, and the record thereof being regular, that an

| 105 | 687 |
| 123 | 304 |
| 105 | 687 |
| 143 | ¹368 |
| 105 | 687 |
| 153 | ⁵598 |
| 105 | 687 |
| 155 | 683 |
| 105 | 687 |
| 156 | ⁸ 59 |
| f156 | ⁸ 60 |
| 156 | ¹ 64 |
| f156 | ⁸498 |
| 156 | ⁸499 |
| 105 | 687 |
| e158 | ² 69 |
| 158 | 75 |

election under the local option law has been prayed for by the requisite number of electors, is conclusive of the preliminary steps necessary to set the board in motion; citing *Friesner v. Common Council*, 91 Mich. 508.

2. Under section 6 of the local option law of 1889, which provides that the order of the board of supervisors directing that an election be held "shall be entered in full upon the journal of the proceedings of the board for that day, and the same shall be signed by the acting chairman and clerk of the board before final adjournment," it is sufficient if the journal for the day is signed after the close of the session.

3. The statute does not provide for the filing or keeping of any separate order, distinct from that entered upon the journal, and the provision that the board "shall thereupon issue an order directing that such election be held," is complied with by the service upon the officers named in the act of copies of the order, and the publication of the same.

4. Where, in the record of the day's proceedings, other matters appear besides the resolution or order of the board directing the holding of a local option election, it is proper to omit such irrelevant matter from the notices served and posted, and to append thereto the signatures of the clerk and chairman found at the close of the day's proceedings as recorded.

5. The law does not, in terms, require the posting of the certified copy of the order served upon the township clerk, and it is sufficient if said order is embodied in the notice of election posted by that officer.

6. Three of the inspectors signed the original canvass of the votes given in their township, and apparently all joined in the returns that were canvassed by the board of supervisors. And it is held that the board had power to require an amended return if the one made was incomplete, and might, in certain cases, proceed and complete the canvass (see section 12 of the act) without a return.

7. The commissioners of election have authority, under the more recent Australian ballot law, to provide ballots for a local option election; citing *Double v. McQueen*, 96 Mich. 39.

8. The jurisdiction being shown by a valid record and canvass, the determination of the board of supervisors as to the result of a local option election is final.

*Certiorari* to Antrim.   (Corbett, J.)   Argued April 30, 1895.   Decided July 2, 1895.

Relator applied for *mandamus* to compel respondent to accept and file his bond as a liquor dealer, and brings *certiorari* to review order denying the writ. Affirmed. The facts are stated in the opinion.

*W. S. Mesick (Fitch R. Williams,* of counsel), for relator.

*Leavitt & Guile,* for respondent.

HOOKER, J.    The relator filed his petition in the Antrim county circuit court, praying a *mandamus* to compel the treasurer of that county to accept and file his bond as liquor dealer, and, the writ being denied, he has brought the proceeding to this Court by *certiorari.*   The petition for *certiorari* does not contain the allegations of error usual in such cases, and we find a voluminous record, raising numberless questions, some of which, apparently, are not relied upon, and others of which need no consideration, in view of the settled law of the State.   We shall, however, overlook the absence of the allegations of error, and will consider such questions as seem to be of importance.

The main reason relied upon by respondent for his refusal to accept and file the bond is that the general liquor law is superseded in Antrim county by local prohibition, and it is to inquire into the validity of this that these proceedings are prosecuted.   The board of supervisors met at a proper time to consider the submission of the question, and, by their action, determined, by resolution, that such election had been prayed for by the requisite number of electors.   This resolution—being adopted in conformity to law, and the record thereof being regular—is conclusive of the preliminary steps necessary to set the board in motion.   Not only is this made so by the law (Laws of 1889, No. 207, § 6), which provides that such determination shall be final as to the sufficiency of the petitions, and the requisite number of electors signing the same, but it has been so decided by

this Court. *Friesner v. Common Council*, 91 Mich. 508; *Covert v. Munson*, 93 Id. 605.

We may therefore pass to the next question, which arises over the record of the order of election. No objection is made to the form of the order, but it is said that it was not signed by the chairman and clerk of the board of supervisors, as required by law. The resolution or order is recorded in the minutes of the board, and is followed by the statement, "Carried by ayes and nays as follows" (giving them and the result). This was followed by a resolution that the order be published, and the vote by ayes and nays upon that. Then followed the adoption of a resolution in relation to the survey of a road, and then the record of adjournment to the next day. Below this were the signatures. Section 6 of Act No. 207 provides that—

"Such order shall be entered in full upon the journal of the proceedings of the board for that day, and the same shall be signed by the acting chairman and clerk of the board before final adjournment."

It is contended that this means that the specific order must be signed, and that it must appear to have been done before adjournment for the day. If this be so, the signatures must appear before the record of the vote, if the act is literally and technically complied with, and, moreover, the word "final," before "adjournment," is superfluous. No good reason is apparent for such a rule, and it does violence to the language "final adjournment," as already shown. Again, the words "the same" can as consistently allude to "the journal" as to "the order." This appears to be the common-sense construction, and was the one placed upon it by the officers. See How. Stat. § 501, which, in terms, requires all orders to be entered and signed, yet no board makes a practice of having each order signed. It accords with the usual practice of the boards in the signing of records, the journal of each daily session being signed after its close. In many instances

the records have been signed *after* final adjournment; as was the case in *Covert v. Munson, supra.* This was in contravention of the express requirement of the law, and was so held.

It is next contended that the resolution signed by the officers upon the record is not "issuing an order," within the language of the act. The act says that "they shall thereupon issue an order directing that such election be held," etc. The law goes on to provide what the order shall contain, when and where it shall be entered, and how signed, as already stated. It does not provide for the filing or keeping of any separate order, distinct from that entered upon the journal. It does not require any such to be signed, or delivered to anybody. The only issuing which the act provides for is the service of copies upon township officers, and publication of the same. This appears to have been done.

The board met and canvassed the votes, and a complete record of their action was made, including the tabulated statement provided by section 11. Objection is made to this because the entire proceedings of the day are signed, and not the canvass alone. After the canvass the board adopted a resolution of prohibition. We think that a sufficient signing. As already said, the law requires the journal for the day to be signed. See section 11.

Relator alleges that there were irregularities in the proceedings relating to the election, as follows:

1. That no proper notice of election was given.
2. That the ballots did not conform to law.
3. That the township inspectors did not properly authenticate their canvass of votes cast.
4. That votes were illegally counted.
5. That the returns by township inspectors were surreptitiously and unseasonably signed.

The notices served by the county clerk, and those posted by the township clerks, were sufficient. The former contained copies of the order, to which were appended the

signatures of chairman and clerk. The omission of the resolution about roads was proper. In all certified copies of portions of journals and court records, it is usual to append the signatures found at the close of the day's proceedings. The law does not, in terms, require the posting of the certified copy of the order. The notice must embody the order of the board, but it is a notice under the hand of the clerk.

Three of the inspectors signed the original canvass of votes in the township, and apparently all joined in the returns that were canvassed by the board of supervisors, which had power to require an amended return if incomplete (see section 11); and they may, in certain cases, proceed and complete the canvass without a return (see section 12).

The law of 1889 (Act No. 207, § 8) provides for the printing of ballots by the county clerk, and it is argued that the provisions of the more recent Australian ballot law do not apply. It is alleged that the commissioners of election had no authority to provide ballots, and that ballots containing both yes and no votes, to be marked by a cross, were not lawful. We think otherwise, as indicated in the cases of *Double v. McQueen*, 96 Mich. 39; *Peck v. Board of Supervisors*, 102 Id. 346.

Section 13 of the act in question provides for action by the board when the result of the county canvass shall show that a majority of the votes cast is in the affirmative. Unless we are to hold that the validity of the local option law is subject to attack by every citizen in the county, in succession, and liable to be held valid one day and invalid the next, as the testimony in individual cases varies, we must conclude that the determination of the board is final. Such is the rule in county-seat cases, and this statute cited (section 13) implies as much in this case, while section 14 explicitly states that the resolution of prohibition is conclusive upon the regularity of the prior proceedings. The jurisdiction being shown by a valid record, a valid canvass, followed by the adoption of pro-

hibition, must be held conclusive upon all.  *Pinkerton v. Staninger*, 101 Mich. 273.

We think the circuit court was right in denying the writ, and his order will be affirmed.

LONG, GRANT, and MONTGOMERY, JJ., concurred. McGRATH, C. J., took no part in the decision.