# JANUARY TERM, 1906.*

### PEOPLE v. HAMILTON.

143    1
156  2 59
f156  4 62

1. INTOXICATING LIQUORS—LOCAL OPTION ELECTION—PETITIONS—
SUFFICIENCY—DETERMINATION BY SUPERVISORS.
   The record of the proceedings of a board of supervisors with
   reference to determining the sufficiency of petitions for call-
   ing a local option election examined, and *held*, to show that
   substantially everything was done which the statute requires.
   Act No. 183, Pub. Acts 1899.

2. SAME—PRESUMPTIONS.
   Where the board of supervisors determines as a fact that the
   requisite number of electors have petitioned for a local option
   election, as provided by section 6 of Act No. 183, Pub. Acts
   1899, it will be presumed that the board complied with the
   law in ascertaining the facts.

3. SAME—RESOLUTIONS.
   There is no legal objection to combining in one resolution the
   finding as to the sufficiency of the petitions and the order
   calling the election.

4. SAME—RECORD—AFFIDAVIT OF PUBLICATION—ACT OF CLERK.
   The act of the clerk of the board of supervisors in recording
   the affidavit of publication after several pages of extraneous
   matter had been recorded after the resolution is not fatal.

Exceptions before judgment from Montcalm; Davis, J.
Submitted November 16, 1905. (Docket No. 242.) De-
cided January 24, 1906.

Thomas Hamilton was convicted of violating the local
option law. Affirmed.

---

* Continued from Vol. 142.

*George E. Nichols* and *C. L. Rarden,* for appellant.

*Frank A. Miller,* Prosecuting Attorney, for the people.

BLAIR, J. The respondent was convicted upon the 10th day of April, 1905, in the circuit court for Montcalm county, of violating the local option law alleged to be in force in that county. Respondent introduced no evidence in his defense, but contended, as he contends in this court, that the alleged local option law was invalid for the reason that the proceedings of the board of supervisors were not sufficient to authorize the submission of the proposed law to a vote of the electors of the county. The fatal omissions of the board relied upon for a reversal of the judgment below are:

*First.* That the board did not, before adopting the order of submission, determine and declare by resolution that, upon the face of the petitions and by reference to transcripts of the poll lists or by the returns and canvass of the last general election, such submission has been prayed for by the requisite number of electors of the county.

*Second.* That the clerk did not spread the original affidavit of publication on the records of the board following the record of the adoption of the resolution of prohibition; that there were 12 pages of record of matters foreign to the local option question intervening between the record of the resolution and order of submission and the record of the affidavit and certificate.

The substance of the proceedings complained of may be stated, so far as necessary for the consideration of the questions involved here, as follows: On the report of the clerk that certain petitions praying for submission of the liquor question to the electors, apparently signed "by more than one-third of the qualified electors of the entire county, as shown by the returns and canvass of the last general election," had been filed in his office, the board, on January 7th, appointed a committee "of five to investigate and report on the local option petitions presented

to this board." On January 9th the committee submitted majority and minority reports, as follows:

"*Gentlemen:* Your committee to whom was referred the matter of the local option petitions, so-called, have thoroughly considered the same, and respectfully report thereon, as follows:

"*First.* There are not the requisite number of petitioners upon legally authenticated petitions to authorize this board to submit this question to the electors of this county.

"*Second.* We therefore recommend that the prayer of the petitioners be denied.

"Dated this 9th day of January, A. D. 1903.

"L. W. SPRAGUE.
"GEORGE MATHISON.
"H. S. SHARPE."

"*Gentlemen:* The minority of your committee to whom was referred the local option petitions, so-called, respectfully submit the following: That upon examination of said petitions we find the requisite number of names upon legally authenticated petitions sufficient in our judgment, and recommend that the prayer of petitioners be granted.

"GRANT TERWILLIGER.
"D. D. DILLEY."

The majority report was rejected by a vote of 14 to 8, and "the minority report was adopted" by a vote of 17 to 4. Thereupon the following resolution was adopted:

"' Whereas, twenty-three petitions from as many townships and wards of Montcalm county, praying that the manufacture of liquor and the liquor traffic be prohibited in said county, have been laid before the board of supervisors at the present session. of the board by the county clerk of said county, which petitions have been duly examined and upon which examination it appears that such petitions have been signed by more than one-third of the qualified electors of said county as shown by the returns and canvass of the general election for State officers held in said county in November, 1902.

"' The board finds that the highest vote cast for any State officer in said county at the said last general election was four thousand three hundred twenty-four votes, and that said petitions have been signed by two thousand three hundred forty-four electors of said county:

" ' Therefore, resolved, and it is hereby ordered, that the question whether the manufacture of liquors and the liquor traffic be prohibited in Montcalm county under the provisions of Act No. 207 of the Public Acts of 1889 and the acts amendatory thereof and supplemental thereto be submitted to the qualified electors of said county at the next general election of township officers in the several townships, villages and cities in Montcalm county, to be held on the first Monday in April, 1903, to ascertain whether or not it is the will of the electors of the county that the manufacture of liquor and the liquor traffic should be prohibited within the limits of the county.'

" On motion of Mr. Helmick, the resolution was adopted by the following yea and nay vote:

" Yeas: Messrs. Bailey, Cadwell, Dickerson, Freeman, Helmick, Holland, Holcomb, Johnson, McNaughton, Montgomery, Sharp, Stearns, Terwilliger, Steere, Van Denberg.

" Nays: None."

Sections 6 and 14 of Act No. 183 of the Public Acts of 1899, are as follows:

" SEC. 6.   At such meetings of the board of supervisors it shall be the duty of the county clerk to lay before them petitions filed in his office praying for such submission of said question of prohibition, and, when upon examination, it shall appear to the said board, upon the face of said petitions, and by the transcripts of the poll lists, or by reference to the returns and canvass of the last general election, that such submission of said question has been prayed for by the requisite number of electors, as hereinbefore provided, they shall, by resolution, determine and declare to that effect, and such determinations shall be final as to the sufficiency of the petitions and the requisite number of electors signing the same, and they shall thereupon issue an order directing that such question shall be voted upon at the next annual township election to be held in and for such county.   Said order shall recite: The filing and examining of the petitions; the resolution determining and declaring that said petitions represent not less than one-third of all the qualified electors of the county as shown by the transcripts of the poll lists, or the returns and canvass of the last preceding general election for State officers held in such county; the ordering of the question of prohibition to be submitted at the next general

election for township officers in the several townships, villages and cities in the county, to ascertain whether or not it is the will of the electors of the county that the manufacture of liquor and the liquor traffic should be prohibited within the limits of the county, which said day of election shall always be at the time of the township meeting for the election of township officers. Such orders shall be entered in full upon the journal of the proceedings of the board for that day, and the same shall be signed by the acting chairman and clerk of the board before final adjournment. The county clerk shall, without delay, cause a copy of such order, duly certified by him, to be delivered to the township clerk of each township, and to one of the inspectors of election of each ward or election district of every city in the county, and shall also at the same time cause such order to be published for three successive weeks in two newspapers published in the county."

"SEC. 14. It shall be the duty of the clerk of such board of supervisors to publish without delay, once in each week until the first day of the next May, in a newspaper published and circulating in such county, to be designated by the board, a copy of the preamble and resolution adopted by the board; as provided by section thirteen of this act: *Provided*, That if such proposition shall have been decided in the negative, such publication shall not be required. The said clerk shall also, without delay, forward to the secretary of State a certified transcript of such resolution and of so much of the journal of the proceedings of the board of supervisors as pertains to such election, including the tabular statement of votes, together with a copy of the affidavit of publication of the notice of the adoption of the resolution. Such original affidavit of publication shall be filed with the clerk of the board of supervisors, and he shall spread the same on the records of the board, following the record of the adoption of the resolution of prohibition, and the said clerk shall state next on the record the date when said notice and affidavit of publication was entered for record, and shall then sign the record officially. The record of such resolution of prohibition and the publication of notice, and all duly certified copies thereof, shall be the evidence of the facts therein stated so far as relates to the territory and municipalities within the limits of said county; and the regularity of any proceedings prior to the adoption of such

resolution by the board of supervisors, shall not be open to question on the examination or trial of any person for the violation of any of the provisions of section one of this act."

It is apparent from the records of the board of supervisors, as above quoted, that substantially everything was done which the statute required to be done. The question whether the requisite number of electors had signed the petitions was directly presented to the board for its decision by a majority and minority report. The board found in favor of the minority report, adopted it, and thereby determined that there was a sufficient number of names upon legally authenticated petitions to authorize an order of submission. The board also explained in the preamble its interpretation of the effect of its action in adopting the minority report, and then proceeded to declare that it found, not by way of recital, but as a fact, "that the highest vote cast for any State officer in said county at the said last general election was 4,324 votes, and that said petitions have been signed by 2,344 electors." The board having determined this fact, which it was its duty to determine, we must presume that the law was complied with. *Giddings* v. *Wells*, 99 Mich. 221; *Hanna* v. *Chalker*, 136 Mich. 8. The record, in our opinion, sufficiently sets forth the essential facts, and no one reading it could have any doubt that the proceedings required by law had been taken. It might, perhaps, be more in accord with the letter of the statute if the board had adopted a distinct resolution determining "that such submission of said question has been prayed for by the requisite number of electors;" but we can discover no legal objection to combining the successive resolutions in one as was done in the case at bar. While the recital in the order of submission of the proportion of signatures to the petitions is not called a resolution, nor, technically, in the form of a resolution, it is, in effect and within the meaning of the statute, a resolution.

We do not think that the clerk's failure to record the

affidavit of publication in the right place should be held to be fatal to the proceedings. The neglect of the officer to perform a mere ministerial duty cannot be permitted to defeat the election.

The judgment is affirmed.

GRANT, MONTGOMERY, OSTRANDER, and HOOKER, JJ., concurred.