KOERBER *v.* BOARD OF SUPERVISORS' OF IONIA COUNTY.

1. INTOXICATING LIQUORS—LOCAL OPTION—PETITION FOR SUBMISSION—SUFFICIENCY—HOW DETERMINED.

   Under the statute (section 5417, 2 Comp. Laws), the determination of the board of supervisors that a sufficient number of the qualified voters of the county had petitioned for the submission of the question of prohibiting the manufacture and sale of intoxicating liquor in the county is final.

2. SAME—LOCAL OPTION—PETITION—WITHDRAWAL OF NAMES.

   Section 5415, 2 Comp. Laws, giving the right to one whose name has been fraudulently attached to a petition to have it erased, does not confer such right upon one who signs such petition of his own volition.

Certiorari to Ionia; Davis, J. Submitted February 23, 1909. (Calendar No. 23,241.) Decided March 10, 1909.

Mandamus by John Koerber to compel the board of supervisors of Ionia county to reconvene and take testimony upon and determine the question of whether an application for submitting the question of prohibiting the sale of intoxicating liquors to a vote of the people had been petitioned for by the requisite number of voters.

There was an order denying the writ, and relator brings certiorari.   Affirmed.

*George E. Nichols* (*Fred A. Baker* and *William C. Manchester*, of counsel), for relator.

*R. A. Hawley* and *Locke & Sheldon*, for respondent.

MONTGOMERY, J.   The relator made application to the circuit court for a writ of mandamus to be directed to the board of supervisors of the county of Ionia, requiring said board to reconvene and hear testimony upon and again determine the question of whether an application made to said board for a submission of the question of prohibiting the sale of intoxicating liquors in Ionia county had been petitioned for by the requisite number of electors.   The circuit judge determined that the action of the board of supervisors, in determining and declaring by its resolution that an election had been prayed by the requisite number of electors, was conclusive and final under the laws of this State, and could not be reviewed by the courts.   He also, in answer to the questions raised by relator's counsel, further determined that an elector, whose name had been entered upon the register of electors in the township, ward, or election district wherein he resided by his initials only, was a duly qualified elector, and that, in view of this determination, the other questions relating to the final action of the board became immaterial.   On this hearing, and also before the circuit judge, it was contended that the petitioner was denied the privilege of being heard before the board of supervisors by its committee, and that for this reason the board should be reconvened and permit the petitioner to be heard by his counsel.

Among the other questions presented on the hearing before the circuit judge, was the question of whether the electors who signed the petition for submission of the question to the electors were entitled at any stage of the proceedings before final action of the board of supervisors

to withdraw their names from the petition. Upon the question of whether the petitioner had the right to be further heard in the case, the return of the board of supervisors was accompanied by an affidavit of one of the members of the committee, and disclosed that George E. Nichols, the attorney for the relator, did go before the committee during its deliberations at various times; that on the morning of January 14th he stated that the relator had been to considerable expense and considerable time had been used by one F. S. Hutchinson in looking over and examining the petitions and the registration lists, and proposed that Mr. Hutchinson act with the committee, and aid and assist the committee in further examining the petitions and registration lists; that said committee made but little reply to this proposition, and did not invite said Hutchinson to appear before the committee or request that he lend the committee any aid or assistance; that Mr. Nichols also stated that he had a list of names that were properly registered in the several election districts of the county, and a list of the names that were not properly registered in said election districts, but did not on that occasion leave such lists; that on the same day, shortly before the noon hour, he again appeared before the committee, and stated, in substance, that he presumed they did not care to have the assistance of Hutchinson, but that he, said Nichols, was not very busy at that time, and would himself aid and assist the committee in the same manner as proposed by him in relation to said Hutchinson; that said committee did not accept such proposition, but finally, before leaving, said Nichols delivered said lists mentioned by him in his former interview into the hands of said committee, stating at the time that he did not make them and had not investigated them, and could not say that they were correct; that afterwards certain individual members of said committee compared said lists with the registration lists in possession of said committee, and found said lists left by said Nichols to be inaccurate and incomplete; that on the morning of Janu-

ary 15th Mr. Nichols again appeared before the committee, and began to compare the said lists left by him with said committee with the registration lists in the hands of said committee, or certain members thereof, and proceeded to correct his list from the lists in the hands of said committee, and that he was then informed that his list was incomplete and incorrect; that Mr. Nichols replied that he could not swear to the accuracy of his list for the reason he had not made it himself; that, finally, Mr. Nichols left with the committee the following letter:

" I am informed that your committee, after hearing the arguments upon the questions of law, presented by the objections filed by my client, John Koerber, to the submission of the question as to whether the manufacture of liquor and the liquor traffic should be prohibited in Ionia county, have decided:

" (1st) That a qualified elector, under the law, must be a registered elector, and that your committee would investigate that question and every name found upon the petitions not registered, should be taken off.

" (2nd) That it was a compliance with the registration laws if an elector had his name upon the registration books by initial only; and that the objections made to the petitioners who registered by initial only is not well taken; and that such names would be counted.

" (3rd) That any petitioner so desiring, by request to the board of supervisors, might have his name removed up to the time of final action by the board, and as to the requests filed you had granted the privilege to each of the parties requesting that their names be removed and have stricken such names from the petitions.

" I have been before your committee twice and asked for an opportunity of presenting the question of fact as to the number of petitioners not registered, and although that privilege has not been in express terms denied me, at the same time the request has been evaded. I am informed that it is claimed that there are less than one hundred persons on those petitions not registered, while on the other hand, I insist if given an opportunity of presenting the facts, that I shall be able, in behalf of my client, to show that there are more than nine hundred, which, together with the withdrawal cards, will bring the number of petitioners below the required per cent., one-third

of all of the qualified electors, as shown by the poll lists
of the last preceding election, and in behalf of Mr. Koer-
ber and other parties—citizens interested—I demand the
right to go before your committee and presenting the
original registration books, if necessary, from each town-
ship, voting precinct and ward, for comparison with the
petitions, for the purpose of furnishing your committee
and the board of supervisors with absolute and undis-
puted testimony that there are upon said petitions a num-
ber of unregistered electors, practically and substantially
as claimed by Mr. Koerber in his objections filed, and be-
fore the committee adjourns or makes its report to the
honorable board of supervisors, I insist that Mr. Koerber
have the right to be heard upon this question before your
committee and before the board, and I am putting this in
writing so that hereafter there will be no question but
what you understood his desires and demands in the
premises, and that you may act accordingly."

No other question of fact appears to have been raised
before the committee, except the question of whether the
names appearing upon these petitions were properly reg-
istered; nor was there any effort to make any proof upon
the subject except by a comparison of the registration
lists with the petition. It is obvious that the committee
were just as capable of doing this as was the attorney for
the relator. It was not like the case cited by relator's
counsel of *State, ex rel. Hawley,* v. *Board of Sup'rs of
Polk Co.,* 88 Wis. 355, in which the effort was made to
offer proof aliunde to show that names appearing upon the
poll list by initial were in fact the names of qualified
electors, but it was a mere question of comparison of
names, a duty which the committee were just as capable
of performing as would be any party appearing before
them. But another obvious answer to this claim of right
is found in the statute itself. Section 5417, 2 Comp.
Laws, provides:

"At such meeting of the board of supervisors it shall be
the duty of the county clerk to lay before them the
petitions filed in his office praying for such election, and
when, upon examination, it shall appear to the said board,
upon the face of said petitions, and by the transcripts of

·the poll lists, or by reference to the returns and canvass of the last general election, that such election has been prayed for by the requisite number of electors, as hereinbefore provided, they shall, by resolution, determine and declare to that effect, and such determination shall be final as to the sufficiency of the petitions and the requisite number of electors signing the same, and they shall thereupon issue an order directing that such election be held in and for such county."

The statute very plainly implies that it is the poll list to which reference is to be made by the board, and the return shows that these poll lists were before the board. The comparison was made by them. The board went as far as they were justified in going, certainly, in investigating the transcripts. There were admittedly 4,052 names on the petition. Of those who had signed the petitions, 597 signed withdrawal cards, and it is claimed that the names of 700 of those who signed the petitions appeared upon the registration lists only by initial. It is the contention of the relator that if the names of those appearing by initial be deducted, and the names of those who sought to withdraw their signatures be deducted, less than one-third of the number of electors in the county would appear. If, however, the relator is wrong in either contention, it is apparently conceded that the names of the requisite one-third did appear upon the petition. We might readily dispose of the question presented by a reference to our own decisions, in which we have held that, under the statute above quoted, the determination of the board that the proper steps had been taken and that the requisite number of electors had signed the application is final. As was said in *Friesner* v. *Charlotte Common Council*, 91 Mich. 504:

"As it would be competent to call an election of the voters of the county, or indeed to have named in the statute a day for an election to be held, it is likewise competent to empower the board to determine when the prerequisite facts exist which shall authorize them to call an election of the people."

See, also, *Thomas* v. *Abbott*, 105 Mich. 687, and *Attorney General* v. *Van Buren Circuit Judge*, 143 Mich. 366.

The important question, however, is presented in the brief, and discussed by counsel, as to whether those who signed the petitions may, without assigning any reason therefor other than a change of mind, withdraw their names after the proceedings are launched.   The statute (section 5415, 2 Comp. Laws) reads as follows:

"To enable each and every elector to determine for himself if his name has been fraudulently attached to said petition, it is hereby required that the signatures of all the petitioners residing in any one and the same township, ward or election district, shall be attached to one petition or list, separate from those of any other township, ward or election district, and that an exact copy of said petition and of all the signatures thereto shall be posted in three of the most conspicuous places in the said township, ward or election district for at least ten days immediately prior to its presentation to the county clerk."

If this statute can be held to imply the right, which we think it fairly does, of one whose name has been fraudulently attached to the petition to have it erased, it goes no further, and confers no right upon one whose name is attached of his own volition and without any fraud to demand such withdrawal.   There was no claim in the applications for withdrawal in the present case that these names were fraudulently procured.   The withdrawal cards were uniform, and read as follows:

"Since signing the same, for reasons satisfactory to myself, I have concluded that I am not in favor of the submission of that question, and I, therefore, respectfully request that my name be withdrawn and struck from said petition; and that you do not consider me as in favor of the submission of the question."

These requests or cards of withdrawal were presented after the action of the clerk in calling together the board of supervisors and up to as late as the 15th of January, the date upon which action was had.   There would be

furnished no opportunity of determining the means resorted to in procuring these withdrawal cards nor of verifying the signatures, except by comparison with the signatures in the list. No provision is made for such withdrawal, and we think under these circumstances that there was no authority for it.

The precise question has been before numerous courts. In *Bordwell* v. *Dills*, 70 Ark. 175, it was said:

" When the petition has been filed with the county court, it has been then delivered, presented to the court, made a court record. The public has now become interested in it. The jurisdiction of the subject-matter has now attached. In the absence of something in the statute permitting it, no individual signer, nor, indeed, all the signers, could thereafter withdraw or erase their names from the petition without leave of the court. And the court should not grant such leave without some good cause shown therefor. He who voluntarily sets on foot a proceeding for the enforcement 'of a salutary police regulation in any community should not be permitted to capriciously undo his work. He should not be allowed to play fast and loose with the interests of society."

The same question and principle was presented in *State* v. *Gerhardt*, 145 Ind. 439 (33 L. R. A. 313). In that case it appeared that three days before the meeting of the board of commissioners a remonstrance against the sale of liquors in the township had been filed, and that, after filing the remonstrance, certain electors who had signed the remonstrance applied to withdraw their names therefrom. The court stated the question as follows:

" Has a remonstrant, after the expiration of the time within which a remonstrance may be filed, the absolute right, without cause, to withdraw from it, leaving the remonstrance, which theretofore had contained sufficient remonstrants to defeat the granting of the license, insufficient, on account of the withdrawal of the signatures, to accomplish the result ? "

This question was answered in the negative in an opinion which commends itself to us in its reasoning. See, also, *Carr* v. *Boone*, 108 Ind. 241. We also think that

*Patterson* v. *Mead*, 148 Mich. 659, in principle, rules this case. Were we to hold otherwise, this might result: The sentiment in favor of the passage of such a resolution might be overwhelming in a county. The minority who were opposed to such a resolution might join with the majority until a sufficient number had petitioned for a submission of the question to the people. At the last moment, and at a period so late that the question could not again be raised, the minority might withdraw their names, and thus defeat a purpose which was entirely lawful, and prevent the majority from obtaining an expression from the people upon the subject. Furthermore, this is a proceeding involving expense. Acting upon a petition regular in form and containing a sufficient number of names, the board of supervisors was called together to act, and we think, within the cases above cited, signers could not then defeat this proceeding by withdrawing their names capriciously.

Having reached this conclusion, it becomes unnecessary to determine or discuss the question of whether a registration by initials is sufficient.

The order of the circuit court is affirmed.

HOOKER, MOORE, and MCALVAY, JJ., concurred. OSTRANDER, J., concurred in the result.