### RUTLEDGE *v.* BOARD OF SUPERVISORS OF MARQUETTE COUNTY.

1. INTOXICATING LIQUORS—LOCAL OPTION—PETITION TO ADOPT—RIGHT OF WITHDRAWAL.

> Petitioners who sign the statutory petition to submit to the voters of a county the prohibition of the manufacture and sale of intoxicating liquors therein, may not withdraw their names after copies of the petition have been posted. 2 Comp. Laws, §§ 5414–5417. Act No. 183, Pub. Acts 1899.

2. SAME—FRAUD.

> No inquiry is permitted by statute to determine whether or not signatures were procured by fraud.

3. SAME — PETITION — "QUALIFIED ELECTORS" — WORDS AND PHRASES.

> A qualified elector is one who meets the requirements of Art. 3, § 1, Constitution of 1909.

4. SAME—MANDAMUS— LOCAL OPTION—ELECTION—DUTY OF BOARD TO ACT.

> Where it appears that the petitions contained the requisite number of names, and that the board of supervisors should have ordered the election, mandamus will lie to require the board to reconvene and discharge this duty. BLAIR, MCALVAY, and BROOKE, JJ., dissenting.

Mandamus by Caleb H. Rutledge and another to compel the board of supervisors of Marquette county to submit the question of prohibiting the manufacture and sale of intoxicating liquor in said county. Submitted January 20, 1910. (Calendar No. 23,808.) Writ granted February 11, 1910.

*William P. Belden,* for relators.

*Frank A. Bell,* Prosecuting Attorney (*A. B. Eldredge, C. F. Button,* and *George P. Brown,* of counsel), for respondent.

MOORE, J. The petition filed in this case presents

questions arising under the provisions of Act No. 207 of the Public Acts of 1889 (2 Comp. Laws, §§ 5412-5435), as amended by Act No. 183, Pub. Acts 1899,—the "local-option law," so called.   Relators and others circulated or caused to be circulated in all of the townships of Marquette county, except three, and in various wards of the cities of Marquette, Ishpeming, and Negaunee, petitions praying that the question, " Should the manufacture of liquor and the liquor traffic be prohibited within the county of Marquette," be submitted to the qualified electors of the county at the next general election.   This work resulted in securing 2,659 signatures to these petitions.   At the last general election for State officers in Marquette county 7,667 votes were cast, so that these petitions required at least 2,556 signatures. The local-option petitions were therefore signed by 103 persons more than the number required by law.   Relators and their associates on or about the 10th of November, 1909, caused copies of the petitions to be posted in the various townships and in the wards of the cities mentioned, in compliance with section 4 of the statute.   Immediately following the posting of these names, withdrawal cards were circulated among the signers of these petitions.   One of these forms of withdrawal specified that the undersigned had reconsidered this matter, and was not in favor of the proposition prayed for in the petition. One hundred ninety-eight withdrawals were secured upon this form.   The other form set forth that the undersigned had been fraudulently induced to sign these petitions, and those withdrawals were sworn to in the form of affidavits. There were ten of these.   Thirteen others signed the same form, but struck out the word "fraudulently."   There were also five others which set forth more specifically the reasons why they wished to have their names withdrawn. Altogether 226 such withdrawals were filed with the county clerk between the time when these petitions were posted and the time when they were filed with the county clerk.   The petitions were presented to the board of super-

visors by the county clerk at its regular meeting on December 1, 1909. The board appointed a committee to canvass the petitions, affidavits, and other matters, collect the facts, and make a report to the board. This committee had public hearings. The committee then prepared a report, in which it considered all the objections raised at the public hearings. On the question of the right to withdraw, the report states that the committee was advised by the prosecuting attorney that petitioners on such petitions had the legal right to withdraw their names therefrom at any time before the petitions are filed with the county clerk. The committee acted upon this advice, and deducted the 220 names withdrawn from the total of 2,659 signatures on the petitions, leaving a balance of 2,439, or 117 less than the number required by law to permit the submitting of said question to a vote. The board of supervisors met and adopted the findings of the committee, and denied the prayer of the petitioners to order an election. Thereupon relators filed this petition for the purpose of having an order made requiring the board of supervisors to reconsider its action and to order an election. The respondent filed an answer to this petition which appears in the record, and a stipulation has been made by which the original petitions and affidavits have been filed with the clerk of this court. The answer of the respondent admits "that said petitions and accompanying affidavits were considered by this respondent as substantially complying with the law."

The answer sets forth in one paragraph that the petitions were signed by 200 and upwards of persons who were not registered electors of the townships, election precincts, and ward from which the petitions signed by them respectively emanated, and that these 200 names of themselves were sufficient to have caused the refusal of an election if the signers of said petition were required to be registered electors. The answer also shows that the respondent reached the conclusion that petitioners may be qualified electors without being registered voters. This

statute has been construed in the following cases: *Thomas* v. *Abbott*, 105 Mich. 687 (63 N. W. 984); *People* v. *Hamilton*, 143 Mich. 1 (106 N. W. 275); *Attorney General* v. *Van Buren Circuit Judge*, 143 Mich. 366 (106 N. W. 1113); *Koerber* v. *Board of Sup'rs of Ionia Co.*, 155 Mich. 677 (120 N. W. 8).

Some of the questions involved in this proceeding have not before been presented to this court. Some of them are presented in the case of *Kern* v. *Board of Sup'rs of St. Clair Co.*, *ante*, 11 (124 N. W. 941), and the case cited therein. In the opinion filed in that case some of the questions presented by this record are considered and decided. It will not be necessary to repeat what is stated in that opinion. A reference to it will show that the board may not, by extrinsic testimony, enter upon the sufficiency of the posting of the notices, nor whether the signatures were fraudulently obtained, nor whether they were the signatures of qualified electors. It was held that the investigation of the clerk should be confined to ascertaining from a comparison of the names on the petition with those on the records mentioned in the statute whether the petitions contained the requisite number of electors. It was further held that the law does not give the clerk authority to remove names, nor to investigate any question of fraudulent signing. It was also held that the duty of the board of supervisors is to review the action of the clerk, and to decide from the face of the papers and records whether the requirements of the law have been met, and, if the board so finds, then it has no discretion in the matter, but should order the election. In that case the question of whether one who had voluntarily signed a petition, might, after the posting of the notices, and before the filing of the petitions with the clerk, withdraw his name, was not at issue, and was not decided unless what was said about the clerk having no authority to remove names from the petition gives rise to such an inference.

In the case of *Koerber* v. *Board of Sup'rs of Ionia*

*Co.*, 155 Mich. 677 (120 N. W. 8), it was held that one who had voluntarily signed a petition could not withdraw his name therefrom after the petitions were filed with the county clerk. It was not decided therein that he could not do so between the time of the posting of a copy of the petitions, and the filing of the originals with the county clerk. The reasoning, however, of the opinion and the quotations made therein from the decisions of other courts, logically we think leads to this result. To hold otherwise might give rise to great uncertainty. A case might be imagined where, after the requisite number of names had been secured to set the machinery of the law in motion, persons who had attached their names to the petitions, and had lulled the circulators of the petitions into a feeling that sufficient signatures had been procured, might then withdraw their names, having intended to do so from the first, and thus prevent the submission of the question at the next general election. There is no provision in the law for the withdrawal of the names after the petition is posted, and we think no such provision should be read into it. In the case of *Koerber* v. *Board of Sup'rs of Ionia Co.*, *supra*, it was not necessary to pass upon the question of whether an inquiry could be entered upon where it was alleged the name had been fraudulently attached to the petition, but the question is directly passed upon in the case of *Kern* v. *Board of Sup'rs of St. Clair Co.*, *supra*.

One other question remains, and that is: Must one within the meaning of this statute in order to be a qualified elector be a registered elector? This precise question has not been before us, but we are all agreed that a qualified elector within the meaning of this statute is one who meets the requirements of section 1, art. 3, of the Constitution of Michigan (1909).

It follows from what has been said that neither the clerk nor the board of supervisors possessed authority to permit the names to be withdrawn, and it was the duty of the board to count the names as they appeared on the petition.

It appears that the petitions contained the requisite number of names, and that the board of supervisors should have ordered the election. They will be required to reconvene and to discharge this duty.

Writ granted.

MONTGOMERY, C. J., and OSTRANDER, HOOKER, and STONE, JJ., concurred with MOORE, J.

BLAIR, J. I concur in the foregoing opinion. I think, however, that the order should be that the board reconvene and act upon the evidence required by the statute as construed in *Kern* v. *Board of Sup'rs of St. Clair Co.*

McALVAY and BROOKE, JJ., concurred with BLAIR, J.