EHINGER v. GRAHAM.

1. INTOXICATING LIQUORS—LOCAL OPTION—TIME FOR POSTING COPY OF PETITIONS—AFFIDAVITS.

Since the number of days required between the posting of local option petitions and the presentation to the clerk is to be determined by excluding the first and including the day of presentation, it was a sufficient compliance with the statute fixing the time at ten days to make the affidavit as of the 8th of October showing the posting on the 28th of September. 2 Comp. Laws, § 5415; 2 Comp. Laws 1915, § 7083.[1]

2. SAME—PETITIONS—ORDER OF ELECTION—SUFFICIENCY.

Where the board of supervisors passed a resolution without declaring that there was a sufficient number of names on the petition and also a later resolution for an election, reciting that the petition contained the proper number of signatures, the order was not a lawful compliance with the act; the provision is mandatory that the board find the number of names on the petition was sufficient in the original resolution and the determination is declared by statute to be final as to the fact. It is not sufficient to

[1]The general rule as to inclusion or exclusion of first and last days in the computation of time is discussed in notes in 49 L. R. A. 193, 15 L. R. A. (N. S.) 686.

refer to the number of names in the order for an election: the resolution itself must show the jurisdictional facts.

3. SAME—DUTY OF BOARD.

A session of the board is deemed to embrace all adjournments although they may extend into another month and the body is authorized by statute to adjourn their meetings from time to time as they may deem it necessary. 1 Comp. Laws, § 2475; 1 Comp. Laws 1915, § 2265.

4. SAME—EVIDENCE.

The presumption prevails that upon the reconvening of the board on an adjourned day it will perform its statutory duty in ordering an election.

Certiorari to Ingham; Collingwood, J. Submitted December 21, 1915. (Calendar No. 27,069.) Decided January 3, 1916.

Mandamus by Louis Ehinger against William H. Graham, Ingham county clerk, to compel respondent to take necessary steps to hold a local option election in said county. From an order denying the writ relator brings certiorari. Affirmed.

*Warner, Raudabaugh & Person* (*John F. Henigan,* of counsel), for relator.

*William C. Brown,* Prosecuting Attorney (*Walter S. Foster,* of counsel), for respondent.

STONE, C. J. The relator and appellant filed a petition in the circuit court for the county of Ingham on November 23, 1915, praying for a writ of mandamus to be directed to the respondent, requiring him to show cause why he did not proceed in accordance with the statute to submit the following question to the voters of Ingham county:

"Shall the manufacture of liquors and the liquor traffic be prohibited within the county"

—at the next general election for township officers in

the several townships, villages and cities in said county. From the petition of relator and the answer of respondent we gather the following statement of facts: On October 9, 1915, a petition from each of the several townships, wards and election districts within the county of Ingham was filed with the respondent as county clerk, praying that such question be submitted as above stated. These petitions contained 4,823 names. At the last November election the highest number of votes cast for any State officer in said county was 11,262. The affidavits accompanying a portion of these petitions show that copies of said petitions had been posted as required by law on the 27th day of September, 1915, and that these affidavits had been sworn to on the 7th day of October, 1915. The affidavits attached to all the remaining petitions showed that copies thereof had been posted as required by law on the 28th day of September, 1915, and these affidavits were sworn to on the 8th day of October, 1915. The annual October session of the board of supervisors convened on October 11th, on which date the respondent, as county clerk, presented these petitions to the said board, and the same were, upon motion, referred to a special committee of three members of the board. On October 12, 1915, the said committee reported to the board as follows:

"To the Honorable Chairman and Members of the Board of Supervisors:

"*Gentlemen:* Your committee appointed to look over the petitions asking that the local option question be submitted to the qualified electors at the next general election of the county, beg leave to report as follows: We find a sufficient number of names on the petitions and therefore offer the following resolution: That it be and is hereby ordered that the question whether the manufacture of liquors and the liquor traffic be prohibited in Ingham county, under the provisions of Act 207 of the Public Acts of 1889, and the acts amendatory thereof and supplemental thereto, be

submitted to the qualified electors of said county at the first general election of township officers in the several townships, villages and cities in Ingham county, to be held on the first Monday in April, 1916, to ascertain whether or not it is the will of the electors of the county that the manufacture of liquor and the liquor traffic should be prohibited within the limits of said county."

[Signed by committee.]

On October 19, 1915, the aforesaid resolution was unanimously adopted upon roll call. Immediately thereafter, and on the same day, Supervisor Brown presented the following preamble and resolution which, upon roll call, was unanimously adopted:

"ORDER OF ELECTION.

"TO ALL WHOM IT MAY CONCERN:

"Whereas, written application and petitions, addressed to the board of supervisors of the county of Ingham, have been received by the clerk of said county and filed in his office, praying that an election be held in and for said county of Ingham, under the provisions of Act No. 207, of the Public Acts of 1889, as amended, to ascertain the will of the qualified electors of said county, whether or not the manufacture of liquors and the liquor traffic should be prohibited within the limits of the said county; and whereas, at a session of the board of supervisors of said county, held at the courthouse in the city of Mason, in said county, on the 19th day of October, A. D. 1915, the said petitions were duly examined; and whereas, upon such examination it was determined and declared by resolution adopted by the said board that such election has been prayed for by the requisite number of electors, to wit, by not less than one-third of all the qualified electors of said county, and the affidavits accompanying said petitions as shown by reference to the returns and county canvass of the last preceding general election for State officers, held in said county:

"Now, therefore, it is ordered and directed by the board of supervisors of the said county of Ingham that an election be and the same is hereby called in the sev-

eral townships, villages, cities and election districts in said county, pursuant to the provisions of the aforenamed act, to ascertain the will of the electors of said county; whether or not the manufacture of liquors and the liquor traffic should be prohibited within the limits of said county."

Here followed the remainder of the order of the manner in which the question should be submitted.

During the same session, and without any recess or adjournment having been taken, the board, upon roll call, voted unanimously to reconsider the action of the board, both as to the report and the resolution contained in the original report of the special committee, and as to the action of the board taken, on the preamble and resolution aforesaid, instructing the clerk to prepare ballots for the vote on the local option question. It was then moved that further action on the two resolutions be made a special order of business for October 22, 1915. Said motion was carried by unanimous vote upon roll call. The matter coming up on the 23d day of October, 1915, it was moved and carried unanimously that when the said board adjourn, they should adjourn until the second Monday in January, 1916. It was further moved and carried, unanimously upon roll call, to defer action on local option petitions until the second day of the January meeting.

At the hearing of this matter in the circuit court it was stipulated and agreed by and between the parties, through their respective attorneys, that the matters at issue in said cause and to be determined by the said court were as follows:

(1) Had sufficient time elapsed between the posting of the petitions and the making of the affidavits thereto attached?

(2) Was the action of the board of supervisors in passing a resolution and order of election sufficient and in accordance with law?

(3) Had the board of supervisors a right to recon-

sider their action taken in adopting the resolution and passing the resolution ordering the election?

(4) Was it the duty of the board to make final disposition of the petitions at the regular October meeting of the board, the same being the next regular meeting after the filing of said petitions?

The trial court answered the first question in the negative, and held that the affidavits were prematurely made, and denied the writ of mandamus. The relator has brought the matter here upon writ of certiorari, and the questions involved have been presented and argued in the order above indicated.

1. The statute (section 5415, 2 Comp. Laws, [2 Comp. Laws 1915, § 7083]) provides that:

"An exact copy of said petition and of all the signatures thereto shall be posted in three of the most conspicuous places in the said township, ward or election district for at least ten days immediately prior to its presentation to the county clerk."

The same section also provides that:

"An affidavit or affidavits, by one or more resident electors of such township, ward or election district, stating therein that an exact copy of such petition, and of all the signatures thereto, has been posted in three of the most conspicuous places in such township, ward or election district, for at least ten days immediately prior to its presentation to the county clerk."

It is the claim of the appellee that this proposition has been conclusively determined by this court in *Crawford* v. *Board of Supervisors of Gratiot County,* 160 Mich. 31 (124 N. W. 1103). In that case several of the affidavits were made on the day of the posting, and several on the succeeding day. In that case Justice OSTRANDER, speaking for this court, said:

"It is clear, therefore, and the fact appears upon the face of the affidavits that when they were made none of the affiants could truthfully have deposed, as the statute expressly requires that he should do, and as he

did, that an exact copy of the petition 'has been posted in three of the most conspicuous places. * * * for at least ten days immediately prior to its presentation to the county clerk.' We need not enter upon a discussion of the possible or probable legislative reasons for this express requirement. It is a requirement which may be easily complied with. We do not construe the provision as one requiring the affiant to depose that, after posting, the matter posted has remained in position to the day of filing the petition with the county clerk. The original petitions are not required to be filed upon any particular day. The posting is not required to be done on any particular day. But when the petitions are filed, they must be accompanied by an affidavit stating two essential facts: One, that an exact copy has been posted; the other, that the posting occurred at least 10 days prior to the time of filing the original with the clerk. We have held that the statute confines the board of supervisors to the face of the petitions and the accompanying affidavits. It is obvious that no one can truthfully depose on the same day on which he posted a copy of the petition that the copy has been posted at least 10 days before its presentation to the county clerk."

We cannot agree with the contention of counsel for appellee that the question here raised was disposed of in the *Crawford Case.* The question still remains: Were the affidavits prematurely made? Upon this question we are unable to agree with the learned trial judge. We think that the general rule gathered from the authorities may be stated in the following language:

As a general rule, where notice is required to be posted or published a specified number of days before an event of which notice is to be given, the required number of days is computed by excluding the day of first posting or publishing, and including the day on which the event is to occur.

In our opinion the affiants could truthfully depose upon the 7th day of October and the 8th day of October,

respectively, that the copies of the petitions had been posted for at least 10 days immediately prior to their presentation to the county clerk. They had not then been presented to that officer.

We think the rule laid down by this court in *Chaddock* v. *Barry,* 93 Mich. 542 (53 N. W. 785), is the rule which should be followed here: That where an act is to be done a certain number of days before a day stated, then that day is excluded in the computation; but where an act is to be done a certain number of days before another act, then the day on which the act is to be done is included. In the *Chaddock Case* Justice Long, speaking for this court, reviewed the earlier cases at great length, and said:

"We have examined the cases with considerable care, in order to deduce the proper rule of construction of this statute [relating to summons in justice court], so that in the future it cannot be said that there is confusion in the cases; and the rule hereafter must be adhered to under this statute, excluding the day of service and including the return day in the computation of time."

That case has been referred to and followed by this court in the following cases: *Crozier* v. *Allen,* 117 Mich. 171 (75 N. W. 300); *Lemon* v. *Hampton,* 128 Mich. 182 (87 N. W. 53); *City of Port Huron* v. *Wright,* 150 Mich. 279, 286 (114 N. W. 76). In the last-cited case the question arose as to the number of days a notice was required to be given of a meeting of the State board of assessors, the statute reading:

"The notice of the time and place * * * shall be published * * * at least five days before the time at which said assessor is required to appear."

It appeared that the notice was first published on May 13th, and the day of hearing therein named as May 18th. Justice Carpenter said:

"The notice was sufficient under the following recent decisions of this court" (citing the cases above cited).

See, also, *In re Miller's Estate*, 173 Mich. 467 (139 N. W. 17).

In that case the question arose as to the service of a citation in the probate court. The service was made on September 4th, and the day fixed for the hearing was on September 18th. The statute provided the citation should be served on the alleged incompetent "not less than fourteen days before the time so appointed." Justice BIRD said:

"We think the service was made in season to comply with the rule laid down in *Chaddock* v. *Barry.*"

Holding as we do, therefore, that the affidavits complied with the law, it becomes necessary for us to inquire:

2. Was the action of the board of supervisors in passing a resolution and order of election sufficient, and in accordance with law? We are constrained to hold, in view of the plain and mandatory terms of the statute, that the resolution was ineffective, and was not a compliance with the statute. Section 5417, 2 Comp. Laws, as amended by Pub. Acts 1899, No. 183, § 6 (2 Comp. Laws 1915, § 7085), provides that:

"When upon examination, it shall appear to the said board, upon the face of said petitions, and by the transcripts of the poll lists, or by reference to the returns and canvass of the last general election, that such submission of said question has been prayed for by the requisite number of electors, as hereinbefore provided, they shall, by resolution, determine and declare to that effect, and such determination shall be final as to the sufficiency of the petitions and the requisite number of electors signing the same, and they shall thereupon issue an order directing that such question shall be voted upon at the next annual township election to be held in and for such county. Said order shall recite: The filing and examining of the

petitions; the resolution determining and declaring that said petitions represent not less than one-third of all the qualified electors   *   *   *   as shown by the transcripts of the poll lists, or the returns and canvass of the last preceding general election for State officers held in such county; the ordering of the question of prohibition to be submitted at the next general election for township officers in the several townships, villages and cities in the county, to ascertain whether or not it is the will of the electors of the county that the manufacture of liquor and the liquor traffic shall be prohibited within the limits of the county."

It requires but a moment's examination of the resolution adopted by the board to lead one to the conclusion that it did not determine and declare that it appeared to the board upon the face of said petitions "that such submission of said question had been prayed for by the requisite number of electors as hereinbefore provided," the statute requiring that they shall, by resolution, determine and declare to that effect. The report of the committee in the instant case found the following:

"We find a sufficient number of names on the petition and therefore offer the following resolution"

—but nowhere in the resolution was there a determination as to what the petitions contained, or whether they complied with the statute. The resolution, which followed, appears to be simply an order that the question should be submitted to the qualified electors. It nowhere appears in that resolution that the board had made the finding which was essential that it should make in order to pass any resolution submitting the question. It is true that in the preamble of the order of election the following language may be found:

"Whereas, upon such examination it was determined and declared by resolution adopted by the said board, that such election has been prayed for by the requisite number of electors, to wit: By not less than one-third of all the qualified electors of said county,

and the affidavits accompanying said petitions as shown by reference to the returns and county canvass of the last preceding general election for State officers, held in said county."

Then follows the order for submission. This preamble refers back to the original resolution, which we have shown was not a compliance with the statute. It is well understood that the above provision of the statute is mandatory, and that until the board of supervisors has, by resolution, determined and declared that the submission of said question has been prayed for by the requisite number of electors, as provided for by the statute, it has no jurisdiction to order an election. There is nothing in the record of the proceedings of the board to indicate that it, or even the committee to whom the petitions were referred, ever made the necessary determination that the submission of the question had been prayed for by the requisite number of electors. An examination of the decisions of this court upon this question will show the necessity of embracing this finding in the resolution. *Friesner* v. *Common Council*, 91 Mich. 504 (52 N. W. 18); *Covert* v. *Munson*, 93 Mich. 603 (53 N. W. 733); *Giddings* v. *Wells*, 99 Mich. 221 (58 N. W. 64); *Thomas* v. *Abbott*, 105 Mich. 687 (63 N. W. 984); *Attorney General* v. *Circuit Judge*, 143 Mich. 366 (106 N. W. 1113); *Kern* v. *St. Clair County Supervisors*, 160 Mich. 11, 14 (124 N. W. 941).

In this connection we have examined, also, *People* v. *Hamilton*, 143 Mich. 1 (106 N. W. 275). In that case it distinctly appeared that the board of supervisors had determined, as a fact, that the requisite number of electors had petitioned for a local option election. We are not here deciding that this whole determination might not be combined in one resolution, where the finding by the board is sufficient, but in this case the requisite finding does not appear as matter

of fact. See, also, *Madill* v. *Common Council,* 156 Mich. 56 (120 N. W. 355).

The resolution should show the facts essential to jurisdiction, at least so far as concerns the existence and sufficiency of the petitions upon which it is based.

In our opinion the action of the board of supervisors was ineffectual, and insufficient in its finding, to warrant the calling of an election. It is therefore unimportant whether the action that was taken was reconsidered, and rescinded or not. It is very evident that the board of supervisors had a duty to perform, which was not performed, in this matter. But this is not a proceeding directed against the board of supervisors. That body has adjourned its annual meeting, which is required to be held in the month of October, to January 10, 1916. A session of the board is deemed to embrace all adjournments, although they may extend into another month. *Hubbard* v. *Winsor,* 15 Mich. 146. The law gives the board of supervisors power to adjourn their meetings from time to time, as they may deem necessary. Section 2475, 1 Comp. Laws (1 Comp. Laws 1915, § 2265).

It is to be presumed that when the board convenes upon its adjourned day, it will perform its statutory duty in this matter. We think the circuit court reached the correct conclusion (although its reasons stated therefor were insufficient), and the judgment of the court below will be affirmed.

KUHN, OSTRANDER, BIRD, MOORE, STEERE, BROOKE, and PERSON, JJ., concurred.