## Thomas Stevenson v. Bay City.

*Official bond: Sureties: Approval: Person acting in antagonistic interests.* Where one of the sureties on an official bond given by a city officer, was also mayor of the city, who had concurrent power with the recorder to approve such bonds, the fact that he was a party to the bond would preclude him from acting officially in regard to it; and his knowledge of a fact tending to invalidate it, could not bind the city. He could not act at the same time in a public and a private capacity, and in antagonistic interests.

*Municipal records: Evidence.* The records of municipal action by a city council cannot be contradicted or supplemented by parol evidence. Where the law requires such records to be kept, they are the only lawful evidence of the action to which they refer.

*City controller*: *Ordinance*: *Negotiating city bonds*: *Liability of sureties on official bond.* Where a city controller is required to perform "such duties in relation to the finances" as "shall be prescribed by ordinance," an ordinance is valid which empowers him to negotiate and dispose of city bonds; and his sureties are liable on his official bond for any misappropriation by him of the proceeds.

*City controller*: *Unauthorized disposal of city bonds.* When bonds are in his hands in shape to be negotiated, it is his official duty to keep them safely until authorized to dispose of them, and an unauthorized disposal is a violation of duty for which his bondsmen are liable.

*Charter of Bay City construed*: *Condition precedent*: *Ordinances*: *Mayor*: *Recorder.* In the absence of a clear provision to the contrary, a provision in the charter of Bay City, requiring ordinances and the date of their publication to be *recorded*, and the record signed by the mayor and recorder, was held not to make such record a condition precedent to the validity and operation of an ordinance regularly adopted by the common council. Every ordinance must necessarily be in writing when acted upon, and an ordinance lawfully adopted cannot be defeated by the omission of such a ministerial duty; for, otherwise either mayor or recorder would be able to control or delay the legislation of the city by his individual action, and would possess a practical *veto* power not conferred or contemplated by the charter.

*Heard October 17. Decided October 22.*

Error to Bay Circuit.

*McDonnell & Cobb* and *Ashley Pond*, for plaintiff in error.

*Marston & Hatch*, for defendant in error.

CAMPBELL, J.

Stevenson was sued as one of the sureties, bound severally upon the official bond of Robert McKinney, controller of Bay City.

A ground of defense set up on the trial was, that he signed it on condition that it should not be delivered until executed also by certain others, who did not in fact sign it, and the court below refused to permit such evidence, offered in connection with a further offer to show that notice of this was given to James J. McCormick, officially, as mayor of Bay City, and who, as well as the recorder, had power under the city ordinances, to approve the sureties of the controller's bond.

It appeared, however, that McCormick was himself one

of the sureties on the bond. Being a party to it, of course he could not approve it, or represent the city by any official action in regard to it. This would put him in a double, and antagonistic position, where his public and private interests would directly conflict. No man can thus deal with himself as a representative of some other interest. The cases of *Clute v. Barron*, *2 Mich. R.*, *192*, and *Dwight v. Blackmar*, *2 Mich. R.*, *330*, laid down this elementary doctrine, which has been repeatedly applied since. The principle is too plain to need any vindication.

An offer was also made to show by parol evidence, that the ordinance fixing the duties of controller, was actually passed by less than a majority of all the aldermen, and therefore void. The court refused to allow the evidence to be admitted. The exception to this ruling is urged, partly on the ground that, in the case of *McCormick v. Bay City*, *23 Mich. R.*, *457*, this court referred to the entry on the minutes as less definite than it ought to have been. It was not held, however, that the meaning was not attainable from the record itself. On the contrary, it was distinctly decided that the entry showed a majority vote, such as the charter required, and that this meaning was derivable from the language alone, properly construed by the principles of interpretation required to be applied to such official entries. The offer was, therefore, to contradict the public records of Bay City, by parol. When the law requires municipal bodies to keep records of their official action in the legislative business conducted at their meetings, the whole policy of the law would be defeated if they could rest partly in writing and partly in parol, and the true official history of their acts would perish with the living witnesses, or fluctuate with their conflicting memories. No authority was found, and we think none ought to be, which would permit official records to be received as either par-

tial or uncertain memorials. That which is not established by the written records, fairly construed, cannot be shown to vary them. They are intended to serve as perpetual evidence, and no unwritten proofs can have this permanence. —See *Hall v. People, 21 Mich., 456.*

It is also urged that, under the charter of Bay City, there was no power to impose upon the controller the duty of negotiating its bonds. As this was the occasion of the suit, McKinney having failed to account for the proceeds of city bonds which he disposed of, the objection, if valid, would render the official security inapplicable to the case. The sureties were only liable for his defaults as controller, acting under color of office.

The charter (*2 Sess. L., 1869, p. 585, § 40*) declares that, "The controller shall perform such duties in relation to the finances, accounts, and other matters of the city, as shall be prescribed by ordinance."

There is no other officer in whom the charter itself vests any specific powers in regard to the negotiation of loans or bonds. They are not peculiarly appropriate to the treasurer. The whole subject is left open for such action as may be found proper. It cannot be seriously urged that this is not a function "in relation to the finances of the city." And if there is a valid ordinance on the subject, his duties under it are as clearly duties belonging to the office of controller, as any of the duties imposed upon him for any purpose.

It is also urged that it was error to hold that he would be liable for the proceeds of bonds, when not directed by the council to negotiate them. But, as he is the only officer who can negotiate them under the ordinance, and the bonds are not complete without his signature, it is evident that, when bonds are in his hands in proper shape to be issued, it is his official duty to keep them safely until he

lawfully negotiates them; and the power he thus obtains over valuable securities, is one of the very reasons why bonds are required of him. It is quite as necessary to guard against an embezzlement of the bonds as of their proceeds. The case of *People v. Treadway, 17 Mich., 480,* is in point.

The ordinance is also assailed on the ground that it could not become valid until it was recorded, and the record signed by the mayor and recorder. The authority for this objection is supposed to be found in section thirty-two of the charter, which declares that the recorder "shall keep a record of any ordinance enacted, and of the time of its publication, which record shall be signed by the mayor and recorder."

This provision is found in the section declaring the general duties of the recorder, and not in those relating to the business of the council. A previous part of the same section requires him to keep a record of the council proceedings in the proper books provided therefor,—a requirement already contained in the sections relating to the council.

By section six, the mayor is required to preside in the council, and is forbidden to vote except in case of a tie. By section eighteen ordinances are required to have the concurrence of a majority of all the aldermen. There is no case, therefore, in which the mayor can have any voice in passing or preventing the passage of an ordinance. This would render it necessary, in case of any serious doubt upon the charter, to consider whether it could have been designed, that an ordinance passed regularly, could be defeated or indefinitely postponed by an officer having no veto in the ordinary way.

An ordinance must of necessity be in writing before it is acted on by the council. It would be entirely compe-

tent to insert it at length in the record of proceedings, but whether so inserted or not, the written document must be acted on and adopted before any such entry could be made. It would be necessary for the recorder to have it in his possession as an adopted ordinance, in advance of any possible record of it. By section thirty-two it is declared that a certain class of ordinances shall not take effect until they have been published at least one week. But by the provision already referred to in the same section, the record which is to be signed by the recorder and mayor, is to indicate the "time of its publication." If the record is necessary to show the ordinance in existence, it must follow that no ordinance can take effect until after publication, and this conclusion is inconsistent with the only express direction on that subject, which prescribes publication as a condition precedent to the enforcement of none but those of a peculiar character. The common rule in regard to legislation is, that it shall take immediate effect unless otherwise provided. This charter is silent on the subject of all but those ordinances required to be published before enforcement. It makes this record, as well as copies of it, no more than presumptive evidence, while copies of other papers and proceedings have the same force as their originals.—§ *79.*

The charter is also silent as to the time within which this record is to be made, and contains no provision as to what course shall be taken in case the recorder and mayor fail in performing their duties in regard to it.

There is only one class of ordinances which can usually work oppressively without public promulgation. Where persons are made liable to penal consequences, it is a hardship if they are not seasonably informed. But as to such consequences the charter is clear: "No ordinance subject-

ing any person to fine or imprisonment shall take effect until it shall have been published for at least one week in a newspaper published in said city."—§ *32*. The guard against another dangerous kind of legislation is found in a clause requiring the concurrence of two thirds of all the aldermen to ordinances granting rights, privileges or franchises to any person or corporation.—§ *18.*

As the corporation meetings are public, and as the city records of meetings and all other proceedings are required to be open to public inspection (§ *18*), there can be no very good reason why ordinances made for the guidance and regulation of city officials and city business, should be published before taking effect in any other way than by their adoption as recorded in the ordinary council proceedings, and the filing of the original. We can find nothing in the charter going further.

In the absence of constitutional and statutory rules to the contrary, such is the rule in regard to statutes. The law once in force (*R. S. 1846, ch. 1,* § *1*), requiring the secretary of state to record statutes, has been repealed, and when existing, did not require a statute to be recorded before taking effect. It is matter of history that some of the enactments of the governor and judges have been lost entirely for want of record. These recording statutes are valuable, and ought to be complied with, but it would require a clearly expressed intent to annul an unrecorded statute or ordinance.

Persons who desire to learn the extent of an officer's duties under ordinances, can readily ascertain them by inquiry and search into the council proceedings, and the ordinances there referred to as adopted. The only authority for requiring the bond of the controller to the city for ten thousand dollars, appears to be derived from this ordi-

nance; but perhaps that fact would not be essential on any point involved in this case. We think the record was not essential to put the ordinance actually passed in force.

There is no error in the judgment, and it must be affirmed, with costs.

The other Justices concurred.