Dennis T. Covert v. Frank Munson, County Treasurer of Gratiot County.

*Liquor traffic—Local option law—Records of board of supervisors —Statute—Mandatory provisions.*

1. The provisions of Act No. 207, Laws of 1889, commonly called the "Local Option Law," fixing the time when the different proceedings taken by the board of supervisors under the act shall be ᵢentered on their journal, and signed by the acting chairman and clerk, are mandatory.
2. The unsigned and unauthenticated proceedings of the board of supervisors cannot be said to be such a record as the local option law requires to be made in order to give effect to its provisions, and make it operative in the county.

*Mandamus.* Argued November 1, 1892. Granted December 2, 1892.

Relator applied for *mandamus* to compel respondent to accept his approved liquor bond and the tax of $500, and to give him the receipt therefor.    The facts are stated in the opinion.

*George P. Stone* and *Edmund Haug,* for relator.

*James Clark* and *Edward Cahill,* for respondent.

PER CURIAM.    This is an application for *mandamus* to compel the respondent to accept from the petitioner his approved bond and $500 for a liquor tax, and to give to him a receipt therefor, to post up in a conspicuous place, as provided by Act No. 313, Laws of 1887, which is an act to provide for the taxation and regulation of the liquor traffic.    The respondent refused to accept the approved bond and the $500 tax, or to give him a receipt, for the reason, as he claimed, that Act No. 207, Laws of 1889, commonly known as the "Local Option Law," was then in force in the county of Gratiot.

The relator claims that certain preliminary questions, which were passed upon and determined by the board of supervisors, as shown by the alleged record of their proceedings, were not properly determined, and that certain facts were not proven as required by law; as, for instance, that it did not appear that the necessary number of electors had petitioned for the special election on local option. This question cannot be considered here, as the declaration of the board of supervisors on that subject is made final by the provisions of the act itself; and in *Friesner v. Common Council,* 91 Mich. 504, it was so held, and that it is not competent afterwards to dispute it.

The only question which can be considered here is whether there is any record at all, such as the law requires to be made of the proceedings under this act, in order to effectuate its provisions.    If there is such a record, then

the statements contained in it must be held in this proceeding to be conclusive, and they cannot be disputed. *Auditor General v. Supervisors*, 89 Mich. 552, and cases cited.

Section 6 of the local option act provides that, when the board of supervisors shall determine that a sufficient number of electors have petitioned for an election, the board shall so declare, and shall then make an order calling the election and fixing the date when it shall be held; and this section then provides that—

"Such order shall be entered in full upon the journal of the proceedings of the board for that day, and the same shall be signed by the acting chairman and clerk of the board before final adjournment."

Subsequent sections of the same act seem to be drawn with the same care, and specifically mention that the different proceedings under it must be entered in full upon the journal, and signed by the acting chairman and the clerk of the board; and also that the inspectors of the election, "without recess or adjournment," shall draw up a statement of the result of the vote, and certify to its correctness, and subscribe their names thereto. These different sections of the law all indicate clearly that the Legislature intended to fix, and did fix, the time when the different proceedings to be taken under the act should be signed, and how and by whom they were to be signed. It is clear, therefore, that these provisions are mandatory, and that they were enacted for the protection of both public interests and private rights.

As was said in *Pearsall v. Supervisors*, 71 Mich. 438, 444:

"The statute requires a record duly authenticated, not only that the result may be evidenced in an enduring form, but that it may be seen and known whether the

board has acted within the limits of the power conferred or not."

The same rule is laid down in *Weston v. Monroe*, 84 Mich. 341, and no contrary doctrine has ever been recognized in this State.

In the case at bar it is conceded that the statute referred to has not been complied with. The clerk, in his return, says that the proceedings of the board in this matter, and which were had on December 11 and 12, 1891, and on February 1, 1892, were not even entered upon the journal until "perhaps in two or three weeks after final adjournment," and that the chairman of the board of supervisors did not sign or pretend to sign the record until May 6, 1892, which was after the time when the petitioner made his demand on the respondent in this case, and after the time when the respondent claimed that the local option law was in force in Gratiot county under and by virtue of these unsigned and unverified proceedings, and at which time, also, as appears from the record, the chairman was out of office, and had no authority under any of the provisions of this act to perform a duty which the law required him to perform at the very time the proceedings were had, and before the final adjournment of the board. Were the statute in relation to the signing directory merely, the neglect to do so would not vitiate the proceedings; but where it is mandatory, as in this case, it must be complied with, or the proceedings cannot be upheld. The facts, as stated, being not only undisputed, but admitted, there is no controverted question of fact to consider, and there is only presented to this Court the one question of law, which is whether these unsigned and unauthenticated proceedings of the board of supervisors can be held to be a record, such as the law requires to be made in order to give effect to its provisions, and put the local option law

in operation within the limits of the county of Gratiot. We must answer this question in the negative. To hold otherwise would be to nullify the plainly expressed provisions of the statute referred to.

It follows that a writ of *mandamus* must be granted.