DEROSIA *v.* LOREE.

LOCAL OPTION — RECORDS OF BOARDS OF SUPERVISORS — COLLAT-
ERAL ATTACK.

> The record of the board of supervisors evidencing the action of
> the board upon a petition to submit to the voters the question
> of the adoption of local option, may not be collaterally
> attacked because of the failure of the clerk to sign the record
> before the final adjournment, where the record had been
> signed by the clerk during his term of office, and had been
> read and approved at a subsequent meeting, the record of
> which was properly authenticated.

Certiorari to Sanilac; Beach, J. Submitted May 25,
1909. (Calendar No. 23,423.) Decided July 15, 1909.

Mandamus by Charles Derosia to compel Richard J.
Loree, treasurer of Sanilac county, to accept a liquor
dealer's bond. An order granting the writ is reviewed
by respondent on writ of certiorari. Reversed, and writ
dismissed.

*Charles F. Gates* (*Harrison Geer, A. F. Bunting,
William C. Manchester,* and *Fred A. Baker,* of coun-
sel), for relator.

*Fred A. Farr* and *W. H. Burgess* (*William H. Ait-
kin* and *Pliny W. Marsh,* of counsel), for respondent.

BLAIR, C. J. On the 24th day of April, 1909, relator
presented to respondent a liquor dealer's bond in proper
form and properly approved, tendered $500 in money, and
demanded the usual receipt in accordance with Act No.
313, Pub. Acts 1887. Respondent refused to receive the
bond and money, or to give the receipt, upon the ground
that the manufacture and sale of intoxicating liquors had
been prohibited after the 1st day of May, 1909, by a vote
of the electors of the county at the local-option election

held on the first Monday in April, 1909. Relator applied to the circuit court for Sanilac county for a writ of mandamus, upon the ground that such election was invalid. The petition set forth, among other things, the following:

" (9) That all the proceedings had before said board in relation to said petition as to the submission of the same to the voters of said county of Sanilac, and the order or resolution made in pursuance thereof by said board, were made upon said 21st day of October, 1908, as appears by the record of said board.

" (10) Your petitioner further shows that the clerk of said board did not sign the journal of the proceedings for said 21st day of October, 1908, where said resolution or order was recorded at any time before the final adjournment of said board of supervisors, as required by section 6 of said act, and neither did he sign said proceedings at any time before the expiration of his then term of office, and said proceedings were not signed by any person acting, or claiming to act, as clerk of said board of supervisors during any of the aforesaid time.

" (11) That said journal containing said proceedings remained unsigned until, to wit, the 29th day of March, A. D. 1909, at which time the said Fred J. Kemp, who had been elected at the regular election held in said county in November, 1908, to succeed himself as such clerk, signed said proceedings as such clerk.  *  *  *

. " (13) An examination of the records was made in the office of the county clerk upon, to wit, the 27th day of March, A. D. 1909, at which time said records were still unsigned by any clerk or any person purporting to act as clerk.  *  *  *

" (18) Your petitioner shows that by reason of the failure of said clerk to sign the records of the proceedings of said board of supervisors before the final adjournment of said board of supervisors, which occurred in the month of December, 1908, all the proceedings were void, and said so-called local-option act is not in force, and will not be in force on the 1st day of May, 1909, but that Act No. 313 of the Public Acts of 1887 is in force in said county, and will continue in force after the 1st day of May, 1909.

" (19) Your petitioner further shows that the said Richard J. Loree has, and did have at the time of the refusal to accept said bond and money and to issue said receipt,

good and reliable information, and from such information the said Richard J. Loree had knowledge that the said Fred J. Kemp, as such county clerk, did not sign said record of the board of supervisors, whereon was recorded said proceedings, including the order and resolution submitting said question of the voting upon said prohibition of the manufacturing and sale of intoxicating liquors in said county of Sanilac until said 29th day of March, A. D. 1909."

Respondent's answer contained, as to the allegation of the petition above quoted, the following:

"*Ninth.* This respondent admits the allegations set forth in paragraph 9 of said petition, but he alleges that the proceedings referred to therein were read, corrected, and approved by said board on the 22d day of October, A. D. 1908, as also appears by the records of said proceedings.

"*Tenth.* Answering paragraph 10 of said petition, respondent says that he has no personal knowledge of the facts alleged therein; and, while he has been informed that they are true, he can neither admit nor deny them, and will leave petitioner to his proofs.

"*Eleventh.* This respondent admits that Fred J. Kemp was elected county clerk of said county at the regular election held in November, 1908, to succeed himself as such clerk; and, while respondent has been informed that the record of the proceedings of the board of supervisors of said county for the 21st day of October, 1908, was not signed by said Kemp until the 29th day of March, 1909, he has no personal knowledge of that fact, and since he has also been informed that said Fred J. Kemp, county clerk, on the 22d day of December, 1908, under his official seal, certified the said proceedings of said board for October 21, 1908, as countersigned by him, he will neither admit nor deny the date when the said proceedings for October 21, 1908, were signed by said Kemp, and will leave petitioner to the proofs. * * *

"*Thirteenth.* Answering paragraph 13 of said petition, this respondent says that he has been informed that the facts stated therein are true, but he has no personal knowledge thereof, and in answer thereto he avers that the official proceedings of said board of supervisors, copy of which is hereto attached, marked 'Exhibit A' and

made a part hereof, shows the signatures of both the chairman and clerk of said board to said proceedings for October 21, and also October 22, 1908.   *   *   *

"*Sixteenth.*   Answering paragraph 18 of said petition, this respondent denies the allegations contained therein, and the conclusions drawn therefrom as therein stated.

"*Seventeenth.*   Answering paragraph 19 of said petition, this respondent admits that at the time the petitioner presented his bond and the said sum of $500, as set forth in paragraph 16 of said petition, he had been informed that Fred J. Kemp, said county clerk, did not sign the record of the proceedings of the board of supervisors of said county, whereon was recorded the order and resolution submitting the question of the prohibition of the manufacture and sale of intoxicating liquors in said county to the vote of the people, until the 29th day of March, 1909, but of these facts this respondent had no personal knowledge."

The matter coming on to be heard, the following occurred:

"*The Court:* The answer as to the material facts is principally upon information and belief, and probably ought not to be treated as admitting away the rights that the public obtained, if they have obtained them; but it admits enough so that this court, as a matter of right and public justice, ought to make an inquiry to ascertain if there is an undisputed fact.   If you have any testimony to offer, you may offer it.

"*Mr. Gates:* We would ask to call the present acting clerk, the deputy clerk, Mr. Allen.

"*Mr. Burgess:* Does the court propose to take up the question of fact now?

"*The Court:* Not conclusively.   I permit them to supplement their petition and the answer with sufficient testimony from which, if uncontradicted, the court can determine whether there is a doubt and an issue of fact to be submitted to the jury; that is, the petition and answer leaves the impression with the court that there is something about that record that ought to be the subject of public inquiry."

In accordance with the ruling of the circuit judge testimony was taken with reference to the date of the clerk's signature.   This testimony was objected to by respond-

ent's counsel, and at the close of the testimony counsel moved to strike out the testimony so far as it tended to change or correct or impeach the record. The court overruled the motion, on the ground that the case of *Auditor General* v. *Hill*, 97 Mich. 81 (56 N. W. 219), authorized such impeachment as to the signature of the clerk. The court granted the peremptory writ, and respondent brings the case before us for review by writ of certiorari.

Section 29 of the act to define the powers and duties of the boards of supervisors, etc. (Act No. 156, Laws 1851), being section 2502, 1 Comp. Laws, provides as follows:

"Every order, resolution and determination of such board of supervisors, made in pursuance of this act, shall be recorded in the records of such board, and signed by the chairman and clerk of such board."

It was held in *Pearsall* v. *Board of Sup'rs of Eaton Co.*, 71 Mich. 438 (39 N. W. 578), that this section was mandatory, and that, in the absence of such authenticated record, the presumption that public officers perform their duty cannot sustain the action taken.

In *Weston* v. *Monroe*, 84 Mich. 341 (47 N. W. 446), it was held that the failure of the chairman to sign the record of the proceedings of the board in equalizing the assessments and apportioning the State tax is fatal to the validity of a tax deed based thereon.

In *Covert* v. *Munson*, 93 Mich. 603 (53 N. W. 733), an application for the writ of mandamus to compel the county treasurer to accept an approved bond and the amount of the tax, and give the receipt therefor, was under consideration. In that case it was conceded that the statute had not been complied with; that the proceedings of the board—

"Were not even entered upon the journal until 'perhaps in two or three weeks after final adjournment,' and that the chairman of the board of supervisors did not sign, or pretend to sign, the record until May 6, 1892, which was after the time when the petitioner made his

demand on the respondent in this case, and after the time when the respondent claimed that the local-option law was in force in Gratiot county under and by virtue of these unsigned and unverified proceedings, and at which time also, as appears from the record, the chairman was out of office, and had no authority, under any of the provisions of this act, to perform a duty which the law required him to perform at the very time the proceedings were had, and before the final adjournment of the board."

It was held, upon the basis of the conceded and undisputed facts, that the local-option law was not operative in the county.

In *Thomas* v. *Abbott*, 105 Mich. 687 (63 N. W. 984), it was held that it was sufficient if the journal entry of the order was signed below the record of adjournment to the next day.

In *Shelden* v. *Township of Marion*, 101 Mich. 256 (59 N. W. 614), the validity of the State and county taxes was assailed for want of the signature of the clerk of the board of supervisors to the record of the board in relation to the equalization of the assessment rolls and the apportionment of taxes for the year in question. At the trial the person who had been clerk, and was then deputy clerk, was permitted to sign the record *nunc pro tunc*, but later on the trial court held that he had no authority to make such amendment. Speaking upon this question, this court said:

"It is, we think, generally held that the clerk whose duty it is to make the record may make amendments of the same while in office, and when no rights have been built up on the faith of the imperfect record. See 1 Dillon on Municipal Corporations (4th Ed.), §§ 294, 295; 1 Beach on Public Corporations, § 1300. See, also, *Boyce* v. *Auditor General*, 90 Mich. 314 (51 N. E. 457). There is respectable authority for holding that the clerk may make such an amendment after having retired from office (*Gibson* v. *Bailey*, 9 N. H. 168; *Kiley* v. *Cranor*, 51 Mo. 541); and, where this is not permitted, it has been held that one who has retired from office, and has been since re-elected, and has custody of the record, may properly make the amendment. *Welles* v. *Battelle*, 11 Mass.

477; *Mott* v. *Reynolds*, 27 Vt. 206. In the present case the amendment consisted simply in affixing the signature of the clerk. He was at the time in the sworn custody of the records as deputy clerk, and could act, within the reasoning and principle of the cases which permit a clerk on reelection to amend a record made up during a former term. He was properly permitted to make the amendment. We do not decide what would be the effect if a third person had acquired rights to the property taxed before the attempted amendment. But such is not the case here. As before stated, this is an equitable action for money paid, and no hardship is done to plaintiff in permitting the amendment. In *Boyce* v. *Auditor General, supra*, we held that the chairman and clerk could, while still in office, affix their signatures. The case of *Auditor General* v. *Hill*, 97 Mich. 80 (56 N. W. 219), is cited as supporting the doctrine that, after having retired from office, the chairman and clerk could not properly affix their signatures to the record. Such a holding is not necessarily in conflict with the views herein expressed, but it should perhaps be stated that the point was not argued or considered in the case of *Auditor General* v. *Hill*. On the contrary, as appears by the opinion, it was admitted that, if the proceedings were not signed until after the chairman and clerk had retired from office, the record was void. The court, therefore, determined the case solely upon the question of fact. The case of *Weston* v. *Monroe*, 84 Mich. 342 (47 N. W. 446), was a case in which no attempt was made to correct the omission, and was also a case in which the rights of third persons had arisen, which distinguishes it from the present. The amendment here was made before the rights of any third parties had intervened, and was made by a lawful custodian of the record, and upon his own knowledge. See, as further bearing upon this question, Cooley on Taxation (2d Ed.), pp. 320, 321; *Parish* v. *Golden*, 35 N. Y. 462."

In the case now before us, it is undisputed that the record was properly signed by the chairman, and was also signed by the clerk at some time during his then or immediately succeeding term of office; and, if the rule of the *Shelden Case* is applicable to this case, the record was properly authenticated. There is much force, however, in the contention of counsel for

appellee that there is a clear distinction between the statutes, which renders that rule inapplicable, in that the local-option statute limits the time for signing the record to the time " *before final adjournment.*" We do not find it necessary, however, to determine this question, since, in our judgment, the case must be determined against appellee upon another point.

The record of the board of supervisors in question is fair upon its face. The record of the board for October 21, 1908, contains the report of the committee to whom the local-option petitions were referred; the resolution submitting the question to the electors and its adoption. Immediately following the adoption of the report and resolution appears the following:

"Moved by Sup. Bishop, seconded by Sup. Auslander, that we adjourn until tomorrow morning at 8 o'clock. Motion carried and board adjourned. Read, corrected and approved, October 22, A. D. 1908.

"JAS. CURRY, Chairman.
"Countersigned: FRED J. KEMP, Clerk."

In the record of the proceedings for Thursday, October 22, 1908, among other things, the following appears:

"Thursday, October 22, A. D. 1908.
"At a regular session of the board of supervisors of the county of Sanilac, continued and held at the courthouse, in the city of Sandusky, on Thursday, October 22, A. D. 1908. Board called to order by chairman. Roll called, quorum present. Minutes of yesterday's proceedings read and approved. * * *

"Moved by Sup. Erwin, seconded by Sup. Murphy, that we adjourn until tomorrow morning at eight o'clock. Motion carried and board adjourned. Read, corrected and approved, Oct. 23, 1908.

" JAS. CURRY, Chairman.
" Countersigned: FRED J. KEMP, Clerk."

The proceedings of each succeeding day of the session are similarly authenticated up to the date of final adjournment on December 18, 1908. A transcript of the record as to the proceedings for December 18th, together with

the clerk's certificate, were received in evidence against relator's objection, and read as follows:

"Saturday, December 18, 1908.

"At a regular session of the board of supervisors of Sanilac county, State of Michigan, continued and held at the courthouse in the city of Sandusky, on Saturday the 18th day of December, A. D. 1908. Board called to order by the chairman. Roll called, quorum present. Minutes of yesterday's proceedings read and approved. * * * Minutes read and approved in open session, Friday, December 18, A. D. 1908. Moved by Sup. Murphy, seconded by Sup. Beckett, that we adjourn *sine die.* Motion carried, and board adjourned.

"JAS. CURRY, Chairman.

"Countersigned: FRED J. KEMP, Clerk.

"STATE OF MICHIGAN, } ss.:
"County of Sanilac.

"I, Fred J. Kemp, clerk of the said county of Sanilac and clerk of the board of supervisors for said county, do hereby certify that I have compared the foregoing copy of the proceedings of the board of supervisors of said county for the year 1908, with the original record thereof, now remaining in my office, and that it is a true and correct transcript therefrom, and of the whole of such original record.

"In testimony whereof, I have hereunto set my hand and affixed the seal of the circuit court of said county this 22d day of December, A. D. 1908.

"FRED J. KEMP, Clerk."

Such being the condition of the record, is it subject to collateral attack and impeachment by parol testimony? It is contended by counsel for appellee that they are not seeking to attack the record, but leave it as actually made. In the language of counsel:

"We are not attempting to contradict the record in any respect. We are not seeking to change one word of, or to add one word to, the record. We raise no question that the record of October 21st as produced is a true transcript of the proceedings of the board for that day; that the board did on that day pass the resolution and order therein recorded. What we claim, and all we claim, is that the record as written up was not signed by the

clerk within the time prescribed by the statute; that is, before the final adjournment of the board."

This contention is more specious than logical. The object of the authentication is to determine with certainty what the board actually did, and without it the record is a mere nullity, and no evidence whatever of their action. We are of the opinion, therefore, that the effect of relator's proceedings was to attack the record, and seek to impeach it in a collateral manner, as against which attack the record imports absolute verity.

In *Stevenson* v. *Bay City*, 26 Mich. 44, an offer was made, and overruled, to show by parol evidence that an ordinance was passed by less than a majority of all the aldermen, and was therefore void. In discussing this ruling, Mr. Justice CAMPBELL, speaking for the court, said:

"When the law requires municipal bodies to keep records of their official action in the legislative business conducted at their meetings, the whole policy of the law would be defeated if they could rest partly in writing and partly in parol, and the true official history of their acts would perish with the living witnesses, or fluctuate with their conflicting memories. No authority was found, and we think none ought to be, which would permit official records to be received as either partial or uncertain memorials. That which is not established by the written records, fairly construed, cannot be shown to vary them. They are intended to serve as perpetual evidence, and no unwritten proofs can have this permanence. See *Hall* v. *People*, 21 Mich. 456."

In *Sweet* v. *Gibson*, 123 Mich. 699 (83 N. W. 407), one question before the court was whether the filing date placed upon a return of the sheriff by the clerk of the court could be contradicted by parol testimony. In the course of the opinion it is said:

"The court allowed the plaintiff to contradict by affidavits the date of the return of the sheriff and the filing made by the county clerk. On one side of this issue is the affidavit of the deputy sheriff that he retained the writ until September 2d, but, supposing it should have been

filed September 1st, he requested the clerk to file it as of that date, and it was so filed. The sheriff also testified that the writ was in the hands of his deputy on September 2d. On the other hand, the return is dated by the sheriff, 'Sept. 1, 1899.' The return is indorsed with the file mark of the county clerk, 'Sept. 1, 1899.' The county clerk made an affidavit that the return was filed in his office September 1, 1899. The county clerk's assistant made affidavit that the file mark, 'Sept. 1, 1899,' is in her handwriting, and that she verily believes that the return was actually filed and indorsed by her September 1, 1899. Circuit Court Rule No. 38 requires the clerk to indorse on every paper the day on which the same is filed. As is made apparent in this case, it is important that the evidence of when papers relating to litigation are filed in the clerk's office shall be of a fixed and permanent character, and shall not rest in the recollection of interested parties. The filing placed upon the papers by the clerk becomes part of the records of the court, and cannot be contradicted by parol. *Stevenson* v. *Bay City, supra; Mudge* v. *Yaples,* 58 Mich. 307 (25 N. W. 297); *Weaver* v. *Lammon,* 62 Mich. 366 (28 N. W. 905); *Attorney General* v. *Rice,* 64 Mich. 385 (31 N. W. 203); *Auditor General* v. *Board of Sup'rs of Menominee Co.,* 89 Mich. 552 (51 N. W. 483); *Toliver* v. *Brownell,* 94 Mich. 577 (54 N. W. 302); *Holmes* v. *Cole,* 95 Mich. 272 (54 N. W. 761)."

Our decisions in *Covert* v. *Munson* and *Auditor General* v. *Hill, supra,* are not in conflict with this opinion. In *Covert* v. *Munson* the facts were all admitted, and in *Auditor General* v. *Hill,* the question does not appear to have been presented, and the case was heard on appeal from the decree rendered in the tax proceedings.

In *Ball* v. *Fagg,* 67 Mo. 481, plaintiff offered parol evidence to prove that a certain ordinance was neither approved by the mayor, nor attested by the clerk, until a month later than the date it purported to have been approved. The trial court rejected the proof, and the ruling was sustained by the supreme court. To the same effect see *State* v. *Main,* 69 Conn. 123, 139 (37 Atl. 80, 36 L. R. A. 623, 61 Am. St. Rep. 30); *Weir* v. *State, ex rel. Axtell,* 96 Ind. 311, 316; *West Chicago Street R. Co.* v. *Morrison, Adams & Allen Co.,* 160 Ill. 288 (43 N. E.

393); *Walker* v. *Smith*, 50 Ga. 487; *Bennett* v. *Tiernay*, 1 Ky. Law Rep. 312. We do not intend to intimate that direct proceedings may not be instituted in behalf of the public to correct the records in question.

In view of the importance to the public of the questions involved, we have felt it to be our duty to determine them (although the petition for the writ of certiorari does not contain, nor is it accompanied by, assignments of error), following the course we have occasionally adopted heretofore. *Thomas* v. *Abbott*, 105 Mich. 687 (63 N. W. 984); *Lewis* v. *Board of Education of Detroit*, 139 Mich. 306 (102 N. W. 756).

The order of the circuit judge is reversed, and the writ denied, but without costs to either party.

GRANT, MOORE, and McALVAY, JJ., concurred with BLAIR, C. J. HOOKER, J., concurred in the result.

OSTRANDER, J. (*concurring*). I concur in reversing the order and determination of the circuit court, and in denying to relator the writ of mandamus. At the time relator tendered his money and bond to the respondent and demanded his license, an election had been held in Sanilac county, the votes had been canvassed and the supervisors had made the determination, declaration, and resolution required by section 13, Act No. 183, Pub. Acts 1899. By section 14 of this act it is provided that—

"The regularity of any proceedings prior to the adoption of such resolution by the board of supervisors shall not be open to question on the examination or trial of any person for the violation of any of the provisions of section one of this act."

Section 1 of the act makes it unlawful for any person, directly or indirectly, to manufacture, sell, give away, or furnish any liquors, or keep a saloon on and after May 1st next following after the adoption by the board of supervisors of the county of a resolution prohibiting the same as provided in section 13. Section 2 of the act provides that after said May 1st, and after the adoption of

said resolution, the provisions of the general liquor law shall be suspended and superseded in the county. It is evident that the legislature did not intend that interested persons might lie still until after an election had been held and the results thereof had been declared, and then avoid that result in a proceeding between parties neither of whom owed any duty, public or private, except to obey the law. So long as the law stood, the respondent owed no duty to any person under the suspended and superseded law. Suppose that the respondent, instead of refusing, had accepted relator's money and bond, and had issued to him the red card—had done just what it is sought in this proceeding to compel him to do. In a prosecution for violation of the local-option law relator would not be permitted to show in his defense the matters now presented as a reason for compelling respondent's action. The fact that he had paid the tax and had possession of the card would be no protection. It is clear, therefore, that until, in some proceeding brought for that purpose, the general law is declared to be operative and not superseded in Sanilac county notwithstanding the proceedings and the election which have been had, respondent does not owe relator the legal duty to comply with his request.

MONTGOMERY and BROOKE, JJ., concurred with OSTRANDER, J.