ALCONA COUNTY v. ALCONA PROBATE JUDGE

1. JUDGES—PROBATE COURTS—SALARIES—STATUTES.

Under the provisions of the probate code, the board of supervisors may set a salary for probate judge above the statutory minimum without affecting the judge's right to fees for certified copies of probate papers and birth certificates (Act No. 288, chap. 1, §§ 3, 4, 17, Pub. Acts 1939, as amended by Act No. 38, Pub. Acts 1941).

2. SAME—STATUTES—BOARD OF SUPERVISORS—PROBATE COURTS—FEES.

In view of the course of legislation upon the salary of probate judges, if a board of supervisors sets the salary of a probate

judge above the statutory minimum, its resolution must inform the judge that the additional amount is to be in lieu of all fees so that he may choose whether to take the statutory minimum and certain fees or the larger salary set by the board, otherwise acceptance of the larger salary would not disentitle him to certain fees (Act No. 288, chap. 1, §§ 3, 4, 17, Pub. Acts 1939, as amended by Act No. 38, Pub. Acts 1941).

3. EVIDENCE—RECORDS—BOARD OF SUPERVISORS—PAROL TESTIMONY. Records of the board of supervisors with reference to official action taken by it may not be supplemented by parol testimony.

4. COUNTIES—BOARD OF SUPERVISORS. The board of supervisors speaks only through its motions and resolutions.

Appeal from Alcona; Dehnke (Herman), J. Submitted January 2, 1945. (Docket No. 7, Calendar No. 42,851.) Decided April 9, 1945.

Assumpsit by Alcona County against George Freer, Alcona Probate Judge, to recover amount of fees. Judgment for defendant. Plaintiff appeals. Affirmed.

*William R. Barber*, Prosecuting Attorney, for plaintiff.

*Herbert Hertzler*, for defendant.

SHARPE, J. This is an action in assumpsit by plaintiff, Alcona county, against the defendant who is the judge of probate of Alcona county for recovery of money claimed to be due the county as representing fees paid to the defendant as judge of probate for certified copies of probate papers and birth certificates.

Defendant was elected and assumed the office of judge of probate on January 1, 1937. He was re-elected in November, 1940, and assumed office January 1, 1941. At the October, 1940, session of the

board of supervisors of Alcona county, the following
resolution was adopted:

"That the salary of the judge of probate, as judge
of probate, be $1,200 per year and as judge of the
juvenile court be $300 per year or a total of $1,500
per year for the ensuing two years."

Subsequent to January 1, 1941, the judge of pro-
bate collected and retained fees in the amount of
$533.80 and upon failure to pay this sum to the
county treasurer, the present action was instituted.

The following sections of chapter 1 of Act No. 288,
Pub. Acts 1939, as amended, commonly known as the
probate code, relative to the compensation of judges
of probate are pertinent to the issue in the case
at bar:

"SEC. 3.   The judges now elected, or to be here-
after elected, shall each receive an annual salary,
to be paid monthly out of any money in the county
treasury of their respective counties, which shall
neither be increased nor diminished during the term
for which they shall have been elected, except as
changed by the increase or diminution of population
of their respective counties.   The amount of such
salary to be paid to the judge of probate of the
several counties shall be based upon and determined
by the population of their respective counties as
shown by the last preceding Federal census, and
such salary shall be in full compensation for all serv-
ices performed by them as such judges, except as is
or may otherwise be provided by law."   (Comp.
Laws Supp. 1940, § 16289–1 [3], Stat. Ann. 1943 Rev.
§ 27.3178 [3]).

"SEC. 4.   Said annual salary shall be,   *   *   *
for counties having less than 7,500, $1,000; and in
addition thereto the judges of probate in each
county   *   *   *   shall receive for their services
as judges of juvenile court, in addition to their reg-
ular salary, the sum of $300 per annum for each

15,000 inhabitants or fraction thereof in their respective counties.  *  *  *

"The board of supervisors of any county may, by a majority vote of all the members-elect, give such additional salary to the judge of probate of that county as shall be deemed just by such board. All local and special acts and provisions relating to the salary and compensation of probate judges are hereby repealed." As amended by Act No. 38, Pub. Acts 1941 (Comp. Laws Supp. 1943, § 16289–1 [4], Stat. Ann. 1943 Rev. § 27.3178 [4]).

"SEC. 17. Except as otherwise provided, no probate judge,  *  *  *  shall receive any fees or compensation for performing any of the duties of his office, except that the probate judge  *  *  *  shall make attested copies and exemplifications of any record, paper or proceeding in such probate court, furnish the same on request to any person, and may collect therefor:  *  *  *  which fees shall accrue to the probate judge or judges of such court.  *  *  * The probate court shall file a report of the fees received each month by the court with the county treasurer of the county on or before the tenth day of the succeeding month. The board of supervisors of each county is authorized to set an annual salary in excess of that established by statute to be paid to the probate judge or judges, of such county, in lieu of the salary which such judge or judges would otherwise receive under this act and such fees. In the event that such judge or judges accept such salary so set, then all fees received by the probate court during each month shall be paid to the county treasurer on or before the tenth day of the succeeding month and shall be credited to the general fund of such county." (Comp. Laws Supp. 1940, § 16289–1 [17], Stat. Ann. 1943 Rev. § 27.3178 [17]).

The trial court held:

"The matter of the probate judge's salary may be handled in one of three ways:

"a.   The board may refrain from taking any action at all, in which case the officer is entitled to the statutory minimum salary and his fees.

"b.   The board may vote a larger salary, under section 4, without affecting fees, in which case the officer is entitled to the salary so voted and also the fees.

"c.   The board may vote a larger salary under section 17, to be *in lieu* of statutory minimum salary and fees, in which case the officer is entitled to the enlarged salary, but the fees belong to the county."

From a judgment of no cause for action, plaintiff appeals and contends that the salary resolution of 1940 was not adopted pursuant to any particular section of the statute; that under the above statutory provisions, where the board of supervisors has voted a salary in excess of the statutory salary, the judge of probate has the choice of insisting upon the statutory salary and fees or of accepting the enlarged salary in lieu of the statutory salary and fees, in which event the fees collected are to be accounted for and paid to the county treasurer; and that the defendant accepted the enlarged salary as provided by the 1940 resolution and is, therefore, liable to the county for fees retained by him.

In order to arrive at the intent of the legislature in enacting the provisions of the code involved in this case, we find it helpful to review the history of the legislation pertaining to the compensation of probate judges.

In *People, ex rel. Eugene E. Douvielle, Judge of Probate,* v. *Manistee County Board of Supervisors,* 40 Mich. 585, Mr. Justice CAMPBELL said:

"From the organization of the State under its first Constitution until 1859, the compensation of judges of probate was determined by the legislature, and was made up of fees for their services paid by parties and estates. In 1859 the legislature by stat-

ute (Sess. L. 1859, p. 518 [Rev. Stat. 1846, chap. 150, as amended by Act No. 187, Pub. Acts 1859]), provided that all judges of probate elected in and after 1860, should be paid by a salary out of the county treasury, to be 'fixed and determined' by the county auditors in Wayne county, and the supervisors in other counties, at not more than eight nor less than five cents for each inhabitant of the county according to each State or United States census, but in no case to be less than $100 nor more than $2,500. A percentage was required to be collected from each estate and paid into the county treasury, and fees were abolished after December 31, 1860. * * *

"In 1863 it was provided that the salary of the judge should be 'fixed and determined' by the supervisors (or county auditors in Wayne county) at not less than $100 nor more than $1,500, except that in Wayne it might be not more than $2,500. * * * Sess. L. 1863, pp. 121, 122 (Act No. 79, Pub. Acts 1863).

"In 1865 certain county boards of supervisors were allowed to fix salaries without reference to the limitation in the law of 1863. Sess. L. 1865, p. 637 (Act No. 291, Pub. Acts 1865). * * *

"In 1873 there were two changes,—one (p. 496 [Act No. 197, Pub. Acts 1873]) allowing beyond salary, to judges, fees for copies and certificates, and the other (p. 188 [Act No. 140, Pub. Acts 1873]) allowing supervisors of all counties but Wayne to fix salaries not to exceed $1,500, and in Wayne fixing the amount absolutely at $2,750."

The *Douvielle Case, supra,* contained two important holdings, stated as follows:

"It is very clear to us that the duties performed by probate judges are in no sense services performed for their respective counties, and that they are in no sense county officers. They exercise a portion of the judicial and prerogative power of the State, and cannot be subjected to the direction of any body inferior to the legislature. It is very plain

that if their salaries can be put under the complete control of any local body, and be changed in its discretion, it will be an unlawful abdication of the power of the State, which cannot be upheld on any principle. The legislature is the only body having charge of State interests. It cannot be liable to the local passions and prejudices which may and often do produce confusion in local affairs, and which, if allowed free action, may destroy the independence and break up the business of one of the most important branches of our judicial system.    *   *   *

"We have no hesitation in saying that under our Constitution (1850) the board of supervisors do not possess, and cannot be allowed to exercise, any control on their own behalf, or any general control at all over these salaries. If they can do anything in the matter, it is only to exercise the delegated power of action once until directed by the legislature to act again. Whether even this power can be granted is a very serious question which is not very important in this case, or probably in most cases now existing, because the judges may undoubtedly, if they choose, accept the salaries fixed, and having gone into office on those terms, and no other compensation being provided by law, both parties may be deemed to have bound themselves.    *   *   *   The power to delegate any authority whatever to fix these salaries is open to so much question that it is very fortunate that the matter can be considered by the legislature before any further complications arise."

In 1881, Act No. 277 (Pub. Acts 1881), the legislature fixed the amount of salaries paid the judges of probate based upon the population of the counties. The more populous the county, the larger the salary. Section 1 thereof reads as follows:

"The judges of probate now elected, or to be hereafter elected, shall each receive an annual salary to be paid quarterly out of any money in the county

treasury of their respective counties, which shall neither be increased nor diminished during the term for which they shall have been elected, except as changed by the increase or diminution of population of their respective counties; the amount of such salary to be paid to the judge of probate of the several counties shall be based upon and determined by the population of their respective counties, as shown by each succeeding national or State census; and which salary shall be in full compensation for all services performed by them, in connection with any estate or matter in their respective courts and they shall make no charge to any person for any paper drawn or service performed by them or any person or clerk connected with their office, except for copies of records or papers on file, and certificates and exemplifications, which shall be furnished for ten cents per folio and twenty-five cents for certifying, sealing, and attesting the same."

In 1893, Act No. 155, § 2 (Pub. Acts 1893), the legislature made a further important change in that section which fixed the statutory salary by population by adding the following:

"*Provided, however,* that the boards of supervisors of the several counties of this State may, by a majority vote of all the members elect, give such additional salary to the judge of probate of their respective counties as they deem just: *and provided further,* that this act shall not apply to counties where the salaries of the judges of probate are fixed by special act of the legislature: *and provided further,* that the board of supervisors of each county may, in their discretion, allow in addition to the salaries above prescribed, a sufficient amount to compensate the probate judge for clerk hire, when such clerk is actually necessary and employed."

In the judicature act of 1915, Act No. 314, chap. 3, § 3, Pub. Acts 1915 (3 Comp. Laws 1915, § 12231 [3

Comp. Laws 1929, § 13865]), there was no change in the policy of basing the amount of salary upon population. However, the specific and limited provision for fees, which first appeared in the 1881 act, above quoted, was changed by substituting the following provisions: "Such salary shall be in full compensation for all services performed by them as such judges, except as is or may otherwise be provided by law." This identical language appears in chapter 1, § 3, of the 1939 act now before us.

The 1915 act expressly provided that probate judges were forbidden to receive certain fees or compensations, but it specifically excepted therefrom certain other named fees (chapter 3, § 17, being 3 Comp. Laws 1915, § 12245 [3 Comp. Laws 1929, § 13879]). This same plan has been followed in chapter 1, § 17, of the 1939 act now before us.

Chapter 3, § 4, of the 1915 act (3 Comp. Laws 1915, § 12232 [see as amended by Act No. 343, Pub. Acts 1919 (3 Comp. Laws 1929, § 13866)]) incorporated the same plan of statutory salary scale based upon population as appeared in earlier acts, but it repealed all local and special acts and provisions relating to the salary and compensation of probate judges, and retained the provision permitting the board of supervisors to give additional salary. This latter provision in substantially the same language has been incorporated in chapter 1, § 4, of the 1939 act now before us.

Therefore, prior to the adoption of Act No. 288, Pub. Acts 1939, as amended, under chapter 3, § 3, above mentioned, a judge of probate was entitled to a statutory salary, the amount of which was provided for in chapter 3, § 4, such salary to be "in full compensation for all services performed by them as such judges, except as is or may otherwise be pro-

vided by law." Chapter 3, § 17, authorized the probate judge to collect certain fees. Further under chapter 3, § 4, the board of supervisors was authorized to give to the judge of probate "such additional salary  *  *  *  as shall be deemed just by such board."

In 1939, the legislature passed the so-called probate code, now before us, which expressly repealed the sections of the 1915 act above noted and enacted the sections under consideration in this controversy.

It is agreed that chapter 1, § 3, prescribes a statutory salary for the judge of probate payable out of money in the county treasury, the amount of which is based upon the population of the county; that for the county of Alcona such salary is $1,000; that in addition thereto the judge is entitled to certain fees; and that under this section of the act the board of supervisors may refrain from taking any action relative to the salary of the judge of probate, in which event the judge is entitled to the statutory minimum and fees appertaining to the office.

Chapter 1, § 4, specifies what the minimum salary shall be in the various counties according to population and concludes:

"The board of supervisors of any county may, by a majority vote of all members-elect, give such additional salary to the judge of probate of that county as shall be deemed just by such board."

It is our opinion that under this section of the code, the board of supervisors are authorized to set a salary for the probate judge above the minimum provided without affecting the judge's right to fees granted by chapter 1, § 3.

The following provision in chapter 1, § 17, ap-

pears for the first time and declares a new legislative policy:

"The board of supervisors  \*  \*  \*  is authorized to set an annual salary in excess of that established by statute  \*  \*  \*  in lieu of the salary which such judge  \*  \*  \*  would otherwise receive under this act and such fees. In the event that such judge or judges accept such salary so set, then all fees received by the probate court during each month shall be paid to the county treasurer."

The trial court held:

"If the board intends the increase to be under section 17 the resolution must so state, or specify that the increase is to be *in lieu of fees,* or contain other language which informs the officer that such is the purpose, so that he may know he is required to choose.

"The resolution adopted in October, 1940, is not so worded, and must therefore be deemed to have been adopted under section 4 of the statute."

If the legislature had intended, as claimed by plaintiff, that any salary increase accepted by the judge is in lieu of salary and fees as provided in chapter 1, § 17, then no logical reason can be found for retaining the provision authorizing the board of supervisors to vote an additional salary found in chapter 1, § 4. Chapter 1, § 17, as well as chapter 1, § 4, contains a grant of authority to increase the statutory salary. It is our opinion that the course of legislation upon the subject of compensation for probate judges as well as the language of the code itself supports the trial court's interpretation of the statute.

Defendant contends that the resolution increasing the statutory salary of the probate judge by $200 did not provide that the total salary was in lieu of

salary and fees, therefore, there was no occasion for him to make a choice; that the resolution must be found to have been passed under authority of chapter 1, § 4; and that defendant's acceptance of the enlarged salary does not affect his right to fees.

It appears that during the trial of the cause, counsel for plaintiff undertook to introduce evidence of conversations between defendant and individual members of the board of supervisors which took place prior to the adoption of the salary resolution, the substance of which were that the increase in salary was to be in lieu of fees. It is to be noted that the resolution does not state that the total salary shall be in lieu of fees; and that no other resolution of the board of supervisors made reference to salary or fees of the defendant. It is urged by defendant that the records of the board of supervisors may not be supplemented by parol testimony. We are in accord with this view.

In *Derosia* v. *Loree,* 158 Mich. 64, 73, we quoted with approval from *Stevenson* v. *Bay City,* 26 Mich. 44, where we said:

" 'When the law requires municipal bodies to keep records of their official action in the legislative business conducted at their meetings, the whole policy of the law would be defeated if they could rest partly in writing and partly in parol, and the true official history of their acts would perish with the living witnesses, or fluctuate with their conflicting memories. No authority was found, and we think none ought to be, which would permit official records to be received as either partial or uncertain memorials. That which is not established by the written records, fairly construed, cannot be shown to vary them. They are intended to serve as perpetual evidence, and no unwritten proofs can have their permanence.' "

In *Toan* v. *McGinn,* 271 Mich. 28, 33, we said:

"The board of supervisors speak only through their actions and resolutions."

The judgment of no cause of action is affirmed, with costs to defendant.

Starr, C. J., and North, Wiest, Butzel, Bushnell, Boyles, and Reid, JJ., concurred.